IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**VITRO AMERICA, INC. d/b/a BINSWANGER GLASS**             **PLAINTIFF**
                                                          **COUNTER-DEFENDANT**

vs.                                    NO. 07-5150

**DIXIE CONSTRUCTION, LLC, et al.**                       **DEFENDANTS**

### BRIEF IN SUPPORT OF CAMPBELL'S AND BUILT-WELL'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT

#### Introduction

Campbell Electric, Inc. ("Campbell") and Built-Well Construction Company ("Built-Well") (collectively "Movants") are local contractors who respectively provided electrical and build-out labor and materials in constructing a Class A office building known as Commerce Park II in Fayetteville, Arkansas. Prominent Northwest Arkansas developer Ben Israel and various entities he controlled, and which generally utilize the trade name "Dixie," were the majority owner, developer, manager, and general contractor of Commerce Park II. It should be undisputed that the result is a beautiful, four story office building that is fully built-out and ready for occupancy.[1] Without Movants' work, the building would be a shell with no utilities, electricity, lighting fixtures, internal walls, offices, bathrooms and ceilings.

Unfortunately, the Owners and general contractor, Dixie Construction, LLC allegedly ran out of money in early 2007. Workers began sending lien notices. Although Movants entered into forbearance agreements referred to as "Lockbox Agreements," the Owners and contractor never obtained financing necessary to pay amounts owed to the

---

[1] In fact two floors are occupied by Nestle Purina, Clear Channel Communications, and perhaps others.

very people who constructed the building. The result: upwards of $1.5 million of subcontractors left unpaid. Movants are collectively owed more than $450,000. It also resulted in Chambers Bank of North Arkansas ("Chambers") being owed over $10 million for certain financing it advanced. This litigation ensued.

The fight for lien priority between the unpaid subcontractors and Chambers Bank, Movants and other lien claimants makes this case important. Movants rightfully seek the priority to which they are entitled under the Arkansas Materialman's Lien statutes, Ark. Code Ann. § 18-44-101 *et seq.* Chambers Bank is attempting to leapfrog over the very workers who provided the labor, materials, blood, sweat and tears used to construct Commerce Park II. If Chambers Bank's theories are accepted, which they should not be, Movants and other lien claimants could have their lien rights extinguished, thus converting them to unpaid volunteers (as to the remaining amounts they are rightfully and undisputedly owed). Neither the facts nor law supports the affirmative claims Chambers Bank has made against Movants.

The pending motion presents this Court with an opportunity to efficiently resolve several undisputed matters and reserve larger factual disputes regarding the foreclosure and priority issues for the trial the week of August 5, 2008.

For purposes of this motion, Movants respectfully urge this Court to grant summary judgment against Chambers Bank of North Arkansas ("Chambers Bank") on its counterclaims against Movants, including its attempt to invoke Ark. Code Ann. § 18-44-128 as an affirmative direct attorney's fee action, its attempts to interpret the language of certain contracts (which will be referred to as the "Lockbox Agreements") contrary to their plain wording, and its attempts to seek equitable relief in violation of the parol

evidence rule and the plain language of the Lockbox Agreements. Movants further seek summary judgment regarding amounts which are undisputedly owed to them pursuant to the Lockbox Agreements entered into with various cross and third party defendants: Ben Israel; Nancy Israel; Commerce Park II, LLC; Dixie Construction, LLC;[2] Dixie Development, Inc.; and Dixie Management Investments Limited Partners (collectively the "Lockbox Defendants"). Pursuant to the plain language of the Lockbox Agreements, and as admitted by Ben Israel under oath in this action, Campbell is entitled to judgment in the amount of $206,291.71,[3] and Built-Well is entitled to judgment in the amount of $254,364.02 ($249,637.48 + $4,726.54) against those parties.

## Factual Background

The undisputed and material facts are detailed in Movants' Rule 56.1 Statement of Undisputed Facts and Motion for Partial Summary Judgment. All material facts relied upon herein are supported by affidavits, deposition testimony, or discovery pleadings filed in this action.

## Summary Judgment Standard

Rule 56 provides the Court with an efficient method of disposing of specific counts, thus saving the Court and parties' unnecessary expense and effort in presenting numerous claims and defenses at trial. It further will allow the parties to focus on narrowed legal issues that remain for trial. Once a moving party demonstrates that there is not a material issue of fact, it is the non-moving party's obligation to come forward with admissible evidence which demonstrates a material issue for trial. Rule 56(c) of the

---

[2] Dixie Construction, LLC has not appeared or filed an Answer in this action. Accordingly, it is in default. Fed. R. Civ. P. 54.
[3] Campbell is further entitled to an additional $10,998.14 pursuant to paragraph 10 of its Lockbox Agreement, which amount it inadvertently omitted from its counterclaim.

3

Federal Rules of Civil Procedure provides that summary judgment may be granted "if the pleadings, depositions, [and] answers to interrogatories and admissions on file . . . show that there is no genuine issue of material fact and that the moving party is entitled to the judgment as a matter of law." "So long as whatever is before the District Court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied[,]" the motion should be granted. *Lujan v. Nat'l Wildlife Federation*, 110 S. Ct. 3177, 3187 (1990).

Once a party has carried its burden under Rule 56, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 586 (1986). The non-moving party may not simply rest upon general allegations in the complaint or assertions that there exists a genuine issue of material fact. See *Lujan*, 110 S. Ct. at 3188. Rather, Chambers Bank and the others against whom this relief is sought must, by affidavits or other admissible proof, set forth specific facts showing that there is a genuine issue for trial. If they cannot so respond, summary judgment must be entered. Fed. R. Civ. P. 56(e).

## ARGUMENT

**A.     Chambers Bank's claims for attorney's fees are improper.**

    *i.     Ark. Code. Ann. § 18-44-128 Claim not Available to Mortgage Lender.*

In Count VI of its claim against Campbell, Chambers Bank seeks to recover as damages its attorney's fees based on the fact that Movants have "asserted that their materialmen's lien interest in the Property are paramount in right title and interest to that of Chambers." *See* Amended Counterclaim, Doc. #90 ¶ 157. Chambers Bank has

asserted an identical action against Built-Well.  *See* Doc. 129 at ¶¶ 15-19.  Indeed, Movants have asked that the Court "determine the respective rights of all parties claiming an interest in the property at issue."  They are well within their legal and equitable rights to seek such relief.  The issue of priority is for this Court to decide based on an application of Arkansas law to the facts of the case as determined by the Court.  Ark. Code Ann. § 18-44-125 & -127.

It is fatal to Chambers Bank's claims that Ark. Code Ann. § 18-44-128 does not extend rights to Chambers Bank against Movants under any circumstances.  The statute only grants rights to contractors, subcontractors, and material suppliers who successfully foreclose their materialman's liens against debtors and property owners after providing certain notice.  *Id.*  Chambers Bank is a mortgage lien holder; it is not a contractor, subcontractor, material supplier, debtor, or property owner.  See Doc. #90 at p. 9 ¶ 34; and ¶ 1 of Chambers' Counterclaim, Cross-Claim and Third Party Complaint.  Campbell and Built-Well are not debtors of Chambers or owners of the subject property.  *Id.* p. 13, ¶ 27 & p. 15, ¶ 33; Campbell Aff. at ¶ 12; Fletcher Aff. at ¶ 10.  Although no Arkansas cases appear to have expressly addressed a claim like Chambers Bank asserts, based on the plain language of the statute this Court should easily conclude that Movants are entitled to summary judgment as a matter of law.

   *ii.*  *Any Direct Action for Attorney's Fees not Supported by Evidence.*

Chambers Bank has further implied that it is seeking a direct damage award of attorney's fees on its breach of contract count against Campbell.[4]  Even though Chambers Bank is completely without any basis for asserting a claim for attorney's fees against

---

[4] Although certainly not clear based on the pleadings, initial disclosures and discovery responses, Chambers Bank may also claim it is seeking attorney's fees under its promissory/equitable estoppel counts. *See* Doc. #165, Counterclaim against Built-Well at ¶ 11.

5

Movants via a direct action, Chambers Bank has completely failed to meet its obligation to provide a computation of the damages it seeks to recover from Campbell and Built-Well.  Fed. R. Civ. P. 26(a)(1)(iii) requires that a party provide "a computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]"  A copy of Chambers Bank's Second Amended and Restated Initial Disclosures, dated May 30, 2008, is attached to Movants' motion as Exhibit "E."

> Therein, Chambers Bank merely states that it has:
>
>> requested that this Court enter a judgment awarding it damages against [Campbell] because the Contracting Lockbox Parties have asserted priority in contravention of each of those certain Lockbox Agreements executed by the Contracting Lockbox Parties.  Chambers Bank has sustained substantial damages in defending the present lawsuit and has requested this Court to issue an award of damages associated with the same.

In an effort to quantify the unspecified but allegedly substantial damages Chambers Bank is claiming, Movants sent a Rule 30(b)(6) Notice of Deposition to Chambers Bank, which included categories of testimony as to the damages and attorney's fees Chambers Bank intends to request.  *See* Notice of 30(b)(6) Deposition, Exhibit "F," items 9 and 10.  Chambers Bank designated Mr. Bob Harrison as its corporate designee on these topics, which deposition was conducted May 15, 2008.  A copy of relevant pages of Mr. Harrison's deposition are attached to Movants' motion as Exhibit "G."

Specifically, at pages 32:11-33:20 and 35:15-38:5, Movants' counsel inquired about the topic:

6

> Q: Are you able to quantify how much money you're suing Campbell Electric, Inc. for?
>
> A: Not at this time, no.
>
> Q: Do you have any idea?
>
> A: I – I have not seen those numbers. No.
>
> Q: Do you know how much Chambers Bank is suing Built-Well for?
>
> A: I do not. No.

Exhibit "G" at 33:10-16.

When asked about various details which would be relevant to the determination of an attorney's fee award, Mr. Harrison could provide virtually no guidance as to the basis upon which such fees would be claimed:

> Q: How much in attorney's fees have you incurred as a result of Campbell's claims in this case?
>
> A: I don't have those numbers and that's ongoing.
>
> Q: Do you have an idea of how many . . .
>
> A: I do not. No.
>
> Q: Has more than $10,000 been incurred related purely to the issue of priority?
>
> A: I'm not sure that we have received any kind of billing broken down on a basis that I can – can let you know.

Exhibit "G" at 35:15-36:1.

\* \* \* \* \* \* \* \* \* \*

> Q: Who approves the payment of these legal fees?
>
> A: The legal fees that the bank has incurred?

7

> Q: Right.
>
> A: All of the legal fees of the bank come across my desk. I approve those and then they are forwarded up to Bob Taylor for his signature or Justin Salter. Those two – my signature and one other of their two signatures is required on all – the payment of all legal fees.
>
> Q: Is there an engagement agreement with the Friday Firm that specifically delineates the engagement for the defense on the issue of priority of the mortgage versus the lienholders?
>
> A: No, there is not.
>
> Q: Do you know the hourly rate that is being paid to the lawyers to defend the issue on the issue of priority?
>
> A: No. I don't.

*Id*. at 36:12-37:1.

Finally, Built-Well and Campbell served a joint set of Interrogatories and Requests for Production of documents. Copies of Chambers Bank's responses are attached to Movants' motion as Exhibit "H." Specifically, in Request for Production No. 1, Movants requested "all DOCUMENTS that YOU are relying upon in support of YOUR claim for attorney's fees pursuant to Ark. Code Ann. § 18-44-128." As this Court can see by the attached response, Chambers Bank interposed objections and set forth a vague and overly restrictive scenario in which it would only provide "invoices indicating the total amount of damages . . . upon entering into a protective order with opposing counsel . . ." Chambers Bank further stated that it would "not provide and will redact any narrative" and that it would prevent any other parties from seeing such documentation. While the undersigned counsel has made a good faith effort to obtain more detail, as of

8

this filing, Chambers Bank has provided absolutely no general or specific detail supporting a direct action for attorney's fees.

In short, the party seeking damages must provide initial disclosures providing a detailed computation of those damages. Fed. R. Civ. P. 26(a)(1)(iii). When noticed, it must designate a corporate representative who can testify as to the damages that are being sought. Fed. R. Civ. P. 30(b)(6). Finally, where it fails to do the above, and the party being sued files requests for production of documents, the claiming party should not be able to insulate it from discovery by setting forth obstacles that frustrate the defending party's ability to determine exactly what is being sued for. While the parties can resort to motion and sanction practice under Fed. R. Civ. P. 37, Movants assert that the reasonable resolution should be to find simply that Chambers Bank has failed to present any real evidence of damages. *See Van Carr Enters. v. Hamco, Inc.,* 365 Ark. 625 (2006) (affirming denial of attorney's fee award when movant refused to produce itemized billing statements to other party); *see also Phelps v. U.S. Credit Life Ins. Co.,* 340 Ark. 439 (2000) (identifying amount of time billed by attorney as a factor in determining reasonable attorney' s fees); *Fuller v. Hartford Life Ins. Co.*, 281 F.3d 704, 708 (8th Cir. 2002) (stating amount of time and work required for service appropriate considerations in determining reasonable attorney's fees). Accordingly, this Court should enter summary judgment against Chambers Bank on any direct action for attorney's fees against Movants. In the alternative, it should strike any claim for damages against Campbell or Built-Well and prohibit Chambers Bank from calling any witnesses or introducing any evidence supporting alleged damages. *See* Fed. R. Civ. P. 37(c).

**B.     Lockbox Defendants have no defense to paying Lockbox Agreement sums.**

As set forth above, in March and April of 2007, Built-Well and Campbell were owed significant sums for work performed on Commerce Park II.  In order to allow the owners to pursue permanent financing for the project, the parties executed the Lockbox Agreements.  *See* Exhibits "C" and "D" to Motion for Partial Summary Judgment.  With respect to Campbell and Built-Well, the substance of these documents is identical.  In relevant part, promises to pay were made and guaranteed by the Lockbox Defendants.  Specifically, paragraph 9 of each Lockbox Agreement states:

> 9.     Dr. Ben and Mrs. Nancy Israel, husband and wife, do ***hereby personally guarantee the payments required herein***, as do their companies, including Commerce Park II, LLC, Dixie Construction, LLC, Dixie Development, Inc., and Dixie Management and Investments Limited Partners, (hereinafter collectively the "Israel Group").  Ben and/or Nancy Israel hereby represent that one or both of them are officers or managers of said companies, and that one or both them are authorized to enter into this Agreement in behalf of those companies and partnerships, and to otherwise enter into this Agreement in both their individual and official capacities . . .

(emphasis supplied)

When deposed in this case, Ben Israel verified the Lockbox Defendants' signatures, admitted that there were no defenses to payment, and admitted that Built-Well and Campbell are entitled to the amounts set forth in the Lockbox Agreements.  *See* Exhibit "I," Ben Israel deposition at pages 61-66.  Therefore, the Court should enter summary judgment against all Lockbox Defendants for these amounts.

With regard to Built-Well, paragraphs 9 and 10 of its Lockbox Agreement, Exhibit "C," show that the Lockbox Defendants agreed Built-Well was owed $615,248.90 and that $365,611.42 was paid upon the execution of their Lockbox

Agreement. After giving credit for that partial payment, the principal amount owed to Built-Well is $249,637.48. Pursuant to paragraph 10, the Lockbox Defendants further stipulated to owing Built-Well $4,726.54 in attorney's fees and service of process costs prior to the execution of the Lockbox Agreement. These two amounts are specifically requested in paragraphs 10, 12 and the prayer for relief in Built-Well's cross-claim. See Doc. #39. Under oath, Ben Israel admitted that this principal amount is owed to Built-Well. *See* Israel deposition at pages 49:5-15 & 65-66:17.

With regard to Campbell, paragraphs 9 and 10 of its Lockbox Agreement, Exhibit "D," shows that the Lockbox Defendants agreed Campbell was owed $497,409.19 and that $281,917.48 was paid upon the execution of that Lockbox Agreement. After giving credit for that partial payment, the principal amount owed to Campbell is $215,491.71. Nonetheless, after calculating proper credits, Campbell has claimed the amount of its materialman's lien, which is $206,291.71. See paragraph 4 of Lockbox Agreement. Pursuant to paragraph 10, the Lockbox Defendants further stipulated to owing Campbell $10,998.14 in attorney's fees and service costs prior to the execution of the Lockbox Agreements. Ben Israel has admitted that this principal amount is owed to Campbell. *See* Israel deposition at pages 48:20-49:4 & 63:25-64:3 & 66:11-17.

As demonstrated above, both Campbell and Built-Well entered into contracts with the Lockbox Defendants. The specific amounts of their claims are clearly set forth in the Lockbox Agreements. Moreover, Ben Israel was the authorized signatory on behalf of all Lockbox Defendants, with the sole exception of his wife, Nancy Israel. Mr. Israel has verified all signatures, testified that the specific amounts set forth in each Lockbox Agreement are owed, and that the Lockbox Defendants do not intend to assert any

11

defense to paying those sums. Accordingly, the debts on these claims are undisputed, and judgment should be entered as a matter of law.

**C.    The Court should find that Lockbox Agreements do not contractually establish the priority of Chambers Bank.**

   *i.    Agreement Unambiguously Reads in Movants' Favor*

By way of background, and as will further be established at the trial of this cause, work commenced on the Commerce Park II project prior to Chambers Bank's recording its mortgage on December 28, 2005. This is extremely significant. Specifically, Ben Israel testified on behalf of Dixie Construction, himself and as an owner of the property that work in fact commenced on the project prior to December 28, 2005. Exhibit "I," Israel deposition at 80:9-82:18 and 100:6-101:18. Pursuant to Ark. Code Ann. § 18-44-110, this means that Chambers Bank did not satisfy the statutory formalities to obtaining construction money preference over any materialman's lien claims on the project. A materialman's lien priority dates back to the "commencement of construction." *Id.* § 18-44-110(a)(1). Ben Israel testified that a silt fence was constructed, an entryway was excavated, and several loads of stone were delivered and installed in the entryway prior to December 28, 2005. *See* Israel deposition at 80:9-82:18. He further testified that, based upon his experience, such activity would lead a reasonable person to conclude that construction had commenced or was soon to commence. *Id.* at 82:9-18.

Pursuant to Ark. Code Ann. § 18-44-110(a)(1)-(2) & (b)(1)(B) & (c), that means all validly filed materialman's liens must be paid at a foreclosure sale <u>prior</u> to Chambers Bank's mortgage receiving any credit. *See Dempsey v. McGowan,* 291 Ark. 147, 150, 722 S.W.2d 848 (1987) (establishing that a construction loan must be filed <u>before</u> commencement of work to obtain priority over a materialman's lien); *Lyman Lamb Co. v.*

12

*Union Bank of Benton*, 237 Ark. 629, 374 S.W.2d 820 (1964); *Planters Lumber Co. v. Jack Collier East Co.,* 234 Ark. 1091, 1096, 356 S.W.2d 631 (1962) (stating the priority date of a materialmen's lien is the date construction or repair of the improvement **commenced** regardless of when the goods or services of the particular lienholder were rendered or delivered). While the Court need not resolve this issue at this time, Chambers Bank is requesting an absurd construction of the Lockbox Agreements which would allow them to avoid these facts and the law.

Apparently recognizing its dilemma, Chambers Bank has asserted in its cross-claims that the terms of the Lockbox Agreements contractually obligated Movants not to challenge priority in this matter. This is just not true. The Lockbox Agreements are written contracts signed by all interested parties, including Chambers Bank. The Lockbox Agreements further contain an integration clause providing that "except as provided herein immediately above, this Agreement represents the entire agreement between the parties with regard to the matters addressed herein, and any changes to this Agreement must be evidenced by a writing signed by all parties hereto." Exhibit "C" and "D" at ¶ 8.

It is for the Court to determine, based upon the plain language of the document, and the document alone, whether it is ambiguous. *See First Nat'l Bank of Crossett v. Griffin,* 310 Ark. 164, 169 (1992). If the Lockbox Agreements are unambiguous on the subject matter at issue, parol evidence may not be introduced to determine the parties' intent. *Stilley v. James,* 345 Ark. 362, 369 (2001). If the Court determines that a provision is ambiguous, then parol evidence may be introduced. If the Court allows parol evidence as to the meaning of the Lockbox Agreements, significant issues of fact will

need to be resolved, although Movants are confident Chambers Bank's position will be soundly rejected by the Court.

As to the issues raised in Chambers Bank's cross-claim, Movants point the Court to the following relevant provisions:

> WHEREAS, the ***Claimant has asserted or may assert a mechanics and materialman's lien (the "Lien") against the subject real property*** that is currently owned by Owner (Commerce Park Investments, LLC), which has an undivided 52.7761% fee-interest in the Property . . . said property being located at 2049 E. Joyce Blvd., Fayetteville, Washington County, Arkansas (hereinafter the "Property").
>
> \* \* \* \* \* \* \* \* \* \*
>
> WHEREAS, ***this Lien***, while providing security for payment of funds which are rightfully claimed by Claimant referenced above, ***impairs the ability to obtain permanent and bridge loan financing for the Projects on Property, and all of the parties hereto are desirous of Claimant's lien-release and waiver for expediting such funding and subsequent payment***, from which all parties hereto shall receive substantial benefit and valuable consideration, whether directly or indirectly and, therefore:
>
> \* \* \* \* \* \* \* \* \* \*
>
> 2. ***Upon the funding of such permanent financing, all proceeds of such financing shall be applied as follows:***
>
> ***FIRST, all funds necessary to indefeasibly pay in full the debt to Chambers*** which is (a) secured by the Mortgage which is valid, enforceable and first in priority, (b) evidenced by any loan document dated of even date with the Mortgage, (c) secured by any other mortgage or lien against the property, or (d) otherwise,
>
> SECOND, ***provided the debt to Chambers is indefeasibly paid in full*** in cash as provided immediately above, to that certain lockbox account ("Lockbox") to be established at Elite Title and administered by Elite Title for the purpose of paying ***all remaining balances due to the Claimant at***

>   *the time of such permanent financing pursuant to the terms* hereof, and
>
>   \* \* \* \* \* \* \* \* \*
>
>   5.   . . . **Should Owner and Dixie Construction, LLC** refuse or ***otherwise fail to fully fund the Lockbox as might be required herein*** and Claimant does not receive its final payment in full on or before August 1, 2007, ***then, in such an event and regardless of Owner's purported reason therefore or basis thereof***, Claimant's Release shall be null and void, and Elite Title shall immediately return the un-filed but executed Release to Claimant's attorneys and, thereafter, ***Claimant shall be free to file or, if applicable, re-file and perfect its materialman's lien against the Property and <u>file suit to foreclose upon the same and seek all other remedies available to it without delay, both at law and in equity. In such an event, all pre and post-lien notice and service requirements of Arkansas law shall be waived</u>.***   The Parties acknowledge and agree that ***<u>the purpose of this Agreement is to provide clear title so that permanent financing previously mentioned may be closed to fund the Lockbox</u>*** which will ultimately pay any remaining debts of the Owner and Dixie Construction, LLC, to the Claimant with regard to the Property. . . .
>
>   \* \* \* \* \* \* \* \* \*
>
>   8.   . . . ***Except as provided herein immediately above, this Agreement represents the entire agreement between the parties with regard to the matters*** addressed herein, and any changes to this Agreement must be evidenced in writing signed by all parties hereto. . .

(Exhibits "C" and "D," emphasis and alterations supplied)

The Lockbox Agreements specifically state that Movants asserted lien rights against the Commerce Park II project. Further, it was the intent and desire of the parties that Movants not file their liens so that "permanent and bridge loan financing" for the projects could be secured. There is absolutely no reference in the Lockbox Agreements to the so-called "LOC" Note or separate loans entered into between Chambers Bank and

any other parties.[5]  Neither is there any reference to the source of monies that would be used to make the required partial payments specified in the Lockbox Agreements other than that "Owner shall deliver to Claimant a cashier's check in . . . partial payment . . . ." *See* Exhibits "C" and "D" at ¶ 4.

Upon the obtaining of such "permanent financing, all proceeds of such financing [were to be] applied" in a specified order.  *See id.* ¶ 2.  As this Court will see, that paragraph did not at all address how priority would be established if *permanent financing were not obtained*.  It only says that if permanent financing were obtained all funds would first be applied to pay Chambers Bank's mortgage and then to pay amounts claimed by the Movants.  However, that did not happen.

The Lockbox Agreements do address what was to happen if permanent financing were not obtained.  *Id.* ¶ 5.  Paragraph 5 states that the final payments owed to the potential lien claimants were to be made no later than August 1, 2007:  "Should Owner and Dixie Construction, LLC . . . ***otherwise fail to fully fund the lockbox*** . . . Claimant shall be free to file or, if applicable, re-file and perfect its materialman's lien against the Property and ***file suit to foreclose upon same and seek all other remedies available to it without delay, both at law and in equity***."  (emphasis and alteration supplied).  The Agreement further states that "in such an event, ***all pre- and post-lien notice and service requirements of Arkansas law shall be waived***."

Paragraph 5 goes on to reiterate that "the purpose of this Agreement is to provide clear title so that permanent financing previously mentioned may be closed to fund the Lockbox which will ultimately pay any remaining any debts of the Owner and Dixie

---

[5] Chambers Bank has made several allegations that it entered into a separate Line of Credit agreement in reliance upon the terms of the Lockbox Agreements.

Construction, LLC to the Claimant with regard to the Property." *Id.* Although this is stated multiple times, nowhere is Chambers Bank's alleged understanding remotely referenced. Accordingly, any allegations or evidence regarding alleged conflicting understandings should be stricken or disregarded.

The Lockbox Agreements clearly and unambiguously provide what happens if the Lockbox Agreement was not funded through the obtaining of permanent financing. In such an event, both Built-Well and Campbell were entitled to proceed with their liens and assert <u>all</u> legal and equitable remedies to which they are entitled, including priority over Chambers Bank's belatedly filed, deficient mortgage. Nowhere in the Lockbox Agreements, either explicitly or by implication, did the Movants agree to priority in the event that financing was not obtained. Accordingly, this Court should, as a matter of law, reject Chambers' Bank's request for a Declaratory Judgment, its action for breach of contract and its claims for equitable/promissory estoppel, which counts rely upon alleged understandings, a separate loan, and other matters in violation of both the plain language of the Lockbox Agreements and the parol evidence rule.

  ii. *If Ambiguous, Factual Disputes Remain for Trial*

In the event that the Court determines that any of above-referenced provisions are ambiguous, the parties will find themselves in an awkward position with respect to proving the intent of the Lockbox Agreements. As set forth in the Affidavits of Keith Campbell and Phillip Fletcher on behalf of Movants, neither of these parties conferred directly with any Chambers Bank representatives during the negotiation of the Lockbox Agreements. *See* Campbell Aff. at ¶ 6, Fletcher Aff. at ¶ 5. Chambers Bank's witness, Bob Harrison, confirmed this. *See* Harrison Aff. at p. 16. The contents of the Lockbox

Agreements were negotiated between attorneys for Movants and other lien claimants, counsel for the Lockbox Defendants, and perhaps counsel for Chambers Bank. The substance of those negotiations between counsel has not been subject of any discovery or testimony in this matter. Should this Court determine that the terms of the Lockbox Agreements are in any way ambiguous, this could implicate important matters of attorney/client privilege and could necessitate the need for one or more attorneys to become witnesses in this case.

Because Movants believe that the language of the Lockbox Agreements is unambiguous, they urge the Court to make such a ruling in order to streamline this process and confirm that Movants are entitled to seek all legal and equitable rights to which they are entitled.

**D.     Movants' Liens are valid in form, substance and amount.**

Through the Affidavits of Keith Campbell and Phillip Fletcher, as well as the Verified Claim, Statement and Notice of Lien Account which each filed with the Circuit Clerk of Washington County, Arkansas, Movants have submitted sworn proof as to the notices, form, and amount of their respective liens. Accordingly, pursuant to Fed. R. Civ. P. 56, that there is no dispute of material fact regarding the form and amount of their liens. Therefore, the Court should enter partial summary judgment establishing that their liens are valid in the principal amount set forth on the face of those liens.

As previously established, Ben Israel, the authorized agent of Dixie Construction, LLC and a majority Owner of the property, has conceded that there is no defense to paying the amounts claimed by Movants. Further, Movants have established under oath that they in fact provided the materials and labor required of them by their contract with

Dixie Construction and that such labor and material were actually incorporated into the Commerce Park II building.  Pursuant to Fed. R. Civ. P. 56, it is the obligation of any opposing party to "meet proof with proof."  They may not simply rest on allegations in their filings or other unsubstantiated speculation or claims.  Therefore, in an effort to streamline the trial of this cause and avoid the technical necessity of "proving up" each aspect of the lien claims, Movants respectfully urge this Court to enter summary judgment that their liens are valid in form, that they were properly filed, and that the amount of each lien is correct.  The specific requirements of the lien are set forth at Ark. Code Ann. § 18-44-117.  In the event that any party attempts to refute the substance of such liens, Campbell and Built-Well reserve the right to provide supplemental evidence by way of reply or at the trial of this cause.

## **CONCLUSION**

For the reasons set forth herein, partial summary judgment should be granted in favor of Campbell Electric, Inc. and Built-Well Construction Company.  Movants reserve all other claims, rights and defenses asserted in this case and reserve the right to respond to any dispositive motions filed by any of the parties in this litigation.

Respectfully submitted,

CAMPBELL ELECTRIC, INC. and
BUILT-WELL CONSTRUCTION
COMPANY


By:  /s/ John M. Scott
     John M. Scott, #97202
     Meredith K. Lowry, #2005232
     Keisling Pieper & Scott PLC
     One Steele Plaza
     3739 Steele Blvd., Suite 340
     Fayetteville, AR  72703
     Telephone – (479) 251-0800
     Facsimile – (479) 251-0801
     john.scott@kpslaw.com
     meredith.lowry@kpslaw.com


**CERTIFICATE OF SERVICE**

    I, John M. Scott, attorney of record for Campbell Electric, Inc. and Built-Well Construction Company, state that a copy of the foregoing was served upon each party entitled to receive electronic notice via the CM/ECF system on this 20th day of June, 2008.


        /s/ John M. Scott
        John M. Scott