IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| VITRO AMERICA, INC. d/b/a BINSWANGER GLASS | PLAINTIFF |

Case No. 07-5150

vs.

| | |
|---|---|
| DIXIE CONSTRUCTION, LLC; et al. | DEFENDANTS |
| CAMPBELL ELECTRIC, INC. | COUNTER-CLAIMANT<br>CROSS-CLAIMANT AND |
| vs. | THIRD PARTY PLAINTIFF |
| DIXIE CONSTRUCTION, LLC; et al. | CROSS-DEFENDANTS |
| DIXIE DEVELOPMENT, INC., et al. | THIRD PARTY DEFENDANTS |
| CHAMBERS BANK OF NORTH ARKANSAS | COUNTER-CLAIMANT<br>CROSS-CLAIMANT AND |
| vs. | THIRD PARTY PLAINTIFF |
| VITRO AMERICA, INC. d/b/a BINSWANGER GLASS | COUNTER-DEFENDANT |
| DIXIE MANAGEMENT & INVESTMENT LIMITED PARTNERS; BEN ISRAEL; NANCY ISRAEL; PRIME PROPERTY INVESTMENTS, LLC; NEXT CHAPTER RESOURCES, LLC; COMMERCE PARK II, LLC; JOHN P. MARINONI AND ELIZABETH F. MARINONI, CO-TRUSTEES OF THE ELIZABETH F. MARINONI 2006 REVOCABLE TRUST AGREEMENT u/t/d/ JUNE 2, 2006; JOHN P. MARINONI AND ELIZABETH F. MARINONI, CO-TRUSTEES OF THE JOHN P. MARINONI 2006 REVOCABLE TRUST AGREEMENT u/t/d JUNE 2, 2006; TOM MUCCIO; CAMPBELL ELECTRIC, INC.; FLYNT & SON HARDWOOD, INC.; JOHNSON MECHANICAL CONTRACTORS, INC.; KITCHEN DISTRIBUTORS, INC.; and BUILT-WELL CONSTRUCTION COMPANY | CROSS-DEFENDANTS |

(continued on next page)

**CHAMBERS BANK OF NORTH ARKANSAS**

vs.

**THE BENNY BERT ISRAEL REVOCABLE TRUST, u/t/d JUNE 17, 1997; THE NANCY KAYE ISRAEL REVOCABLE TRUST, u/t/d JUNE 17, 1997; NANCY S. MUCCIO; THE MUCCIO JOINT REVOCABLE TRUST, u/t/d AUGUST 25, 1999; THOMAS FATH; NORIKO FATH; THOMAS R. RHYNE; JOANNE W. RHYNE; DAVID TRZECIAK; TAMARA TRZECIAK; THREEJACK, LLC; DON MOBLEY; CLAUDIA MOBLEY; M AND R INVESTMENTS, LLC; CONCRETE SERVICES OF NORTHWEST ARKANSAS, INC.; DAVID OLAND, d/b/a DAVID OLAND WOODWORKING; DUNK FIRE & SECURITY, INC.; DON MOBLEY, d/b/a MOBLEY ARCHITECTS, INC.; STONE PANELS, INC.; NATIONAL HOME CENTERS, INC.; OTIS ELEVATOR COMPANY; HUTCHENS CONSTRUCTION COMPANY; OAKS BROTHER'S, INC.; MILLER COMMERCIAL FLOORING, INC.; DAVID TIPTON, d/b/a TIPTON CONSTRUCTION; FELIX THOMSON COMPANY; C & C INDUSTRIAL & COMMERCIAL CLEARNING SERVICES, LLC; BLEW LAND SURVEYING, INC, d/b/a BLEW AND ASSOCIATES, INC.; METRO BUILDERS SUPPLY OF ROGERS, INC.; AMERICAN AIR CONDITIONING & MECHANICAL, INC.; THE UNITED STATES OF AMERICA**

THIRD-PARTY
PLAINTIFF

THIRD-PARTY
DEFENDANTS

## BRIEF IN SUPPORT OF MOTION OF CHAMBERS BANK OF NORTH ARKANSAS FOR SUMMARY JUDGMENT <u>AGAINST BORROWERS AND GUARANTORS</u>

### I. <u>STATEMENT OF FACTS</u>

On Friday, March 7, 2008, Chambers Bank of North Arkansas ("Chambers Bank") filed its Amended Answer to Counterclaim, Cross-Claim And Third Party Complaint of Campbell Electric, And Counterclaim, Cross-Claim And Third Party Complaint of Chambers Bank (the "Third-Party Complaint") [Docket No. 90] in which it seeks to foreclose its interest in the

property that is the subject of this proceeding (the "Property").  In doing so, Chambers Bank asserted its rights against each party claiming an interest in the Property and against each borrower and guarantor owing indebtedness to Chambers Bank relating to the Property.

Chambers Bank's causes of action relate to a loan in the original principal amount of $10,135,000.00 (the "Loan") made by Chambers Bank to Commerce Park II, LLC, Next Chapter Resources, L.L.C., Prime Property Investments, LLC, John P. Marinoni, and Elizabeth F. Marinoni (collectively, the "Borrowers").  The Loan was guaranteed by Dixie Management & Investment Limited Partners, Ben B. Israel, Nancy Kaye Israel, The Benny Bert Israel Revocable Trust, u/t/d June 17, 1997, The Nancy Kaye Israel Revocable Trust, u/t/d June 17, 1997, Tommy A. Muccio, Nancy S. Muccio, The Muccio Joint Revocable Trust, u/t/d August 25, 1999, Thomas Fath, Noriko Fath, Thomas R. Rhyne, Joanne W. Rhyne, David Trzeciak, Tamara Trzeciak, Threejack, LLC, Don Mobley, Claudia Mobley, and M and R Investments, LLC (collectively, the "Guarantors").

      A.      **The Loan Documents**

          *1.*     *The Promissory Note*

The Loan is evidenced by that certain Land Acquisition, Land Development and Construction Promissory Note (the "Note"), dated December 22, 2005, stating a principal amount not to exceed the lesser of:  (a) $10,135,000.00 and (b) an amount that would cause the Loan/Value Ratio (as defined in the Loan Agreement) to be in excess of Eighty Percent (80%).  A true and correct copy of the Note is attached to Chambers Bank's Statement of Undisputed Facts as Exhibit "A".  The Note and other loan documents were amended and modified pursuant to that certain Loan Modification Agreement, dated December 22, 2006 (the "Modification

Agreement"), a true and correct copy of which is attached to Chambers Bank's Statement of Undisputed Facts as Exhibit "B".

The Note obligates the Borrowers to repay the Loan as set forth in paragraph 3 of the Note, as amended and modified by the Modification Agreement. *See* Exhibit A, p. 4, Paragraph 3. Specifically, the Note obligates the Borrowers to make quarterly payments of accrued but unpaid interest based upon the terms of the Note until January 1, 2008. Thereafter, the Note requires the Borrowers to make monthly payments based upon the amortization schedule set forth within the Note. *See* Exhibit A, p. 4, Paragraph 3. The balance of the unpaid principal and any accrued but unpaid interest owing on the Loan is due at the date of Maturity, as more specifically set forth in the Note. *See* Exhibit A, p. 4, Paragraph 3. The Note contains a clause that includes waiver of protest, presentment for payment, demand, and notice of dishonor. *See* Exhibit A, p. 6, Paragraph 12. The Note further incorporates by reference each of the events of default set forth in Article I of the Loan Agreement, and as more specifically set forth below. *See* Exhibit A, p. 2, Paragraph 1(d).

 2. ***The Loan Agreement***

In connection with the Loan, on December 22, 2005, the Borrowers and each Guarantor entered into that certain Land Acquisition, Land Development, Construction and Semi-Permanent Loan Agreement with Chambers Bank (the "Loan Agreement"), a true and correct copy of which is attached to Chambers Bank's Statement of Undisputed Facts as Exhibit "C". The Loan Agreement delineates the obligations of the Borrowers pursuant to the Loan, and further sets forth the events of default, including the following: a failure by the Borrowers to make any payment of principal or interest on the Note within ten (10) days after such payment is due; a failure by Borrower to comply with any of the other terms or conditions specified herein

or in any of the other Loan Documents (as defined below); the institution of any case, proceeding or other action seeking to have an order for relief against the Borrower or any Guarantor, as debtor. *See* Exhibit C, Aticle I, Event of Default, sections (a), (b), and (c), pp. 5-7.

In addition, Article IV of the Loan Agreement further sets forth the Covenants And Agreements of Borrower And Manager.  Section 4.11 specifically states that "Lender may advance and incur such expenses as Lender deems necessary for the completion of construction of the Improvements and to preserve the Premises and any other security for the Loan, and such expenses, even though in excess of the amount of the Loan, shall be secured by the Mortgage and be payable to the Lender *upon demand*."  *See* Exhibit C, Section 4.11 (emphasis added). Moreover, Section 4.17 states that the "Lender may… defend any action or proceeding purporting to affect the… Premises, or respective rights and obligations of Lender and Borrower pursuant to this Loan Agreement.  Lender may… pay all necessary and reasonable expenses, including reasonable attorneys' fees and expenses incurred in connection with such proceedings or actions, which Borrower agrees to repay…."

Article V of the Loan Agreement sets forth the rights and remedies of the lender upon the borrower's default.  Specifically, Section 5.01 states that "[u]pon the occurrence of any Event of Default, Lender shall have the right, in addition to any other right or remedy of Lender… (e) prosecute or defend any action or proceeding incident to the Premises, in Lender's name or in Borrower's name, as Lender elects."  Further, Section 5.04 of the Loan Agreement states that "[a]ny funds of Lender used for any purpose referred to in this **Article V** or to  perform any covenant or agreement of Borrower or Manager set forth in **Article IV** hereof which Borrower failed or refused to perform, shall constitute Advances secured by the Loan Instruments and shall bear interest at the Default Rate."

3.     *The Land Development, Construction Mortgage, Security Mortgage*

To secure payment of the indebtedness represented by the Note, the Borrowers executed and delivered to Chambers Bank that certain Land Development, Construction Mortgage, Security Agreement and Fixture Filing (the "Mortgage") dated December 22, 2005, and recorded with the Washington County Clerk and Ex-Officio Recorder on December 28, 2005, as File No. 2005-00057342.   A true and correct copy of the Mortgage is attached to Chambers Bank's Statement of Undisputed Facts as Exhibit "D".   The Mortgage created a lien and security interest in favor of Chambers Bank in the Property.

The Mortgage was granted to secure the following: (a) the Note; (b) all agreements, covenants and obligations of the Borrowers under any agreements or documents between the Borrowers and Chambers Bank, including, without limitation, the Loan Agreement; and, (c) all sums advanced for the benefit of the Borrowers; and all other indebtedness of the Borrowers. Further, Section 3.2 of the Mortgage states that if the Property "shall be endangered or shall be attacked, directly or indirectly," Chambers Bank may "take all necessary and proper steps for defense of such interest, including… the *compromise or discharge of claims made against such interest, all at the expense of [the Borrowers]*."  *See* Exhibit D, Section 3.2 (emphasis added).

The Mortgage also contains default provisions within Article V.   Specifically, the Mortgage provides for an event of default if the Borrowers allow the Property to become encumbered, either voluntarily or involuntarily.  *See* Exhibit D, Section 5.4.   Finally, in Section 6.7, the Mortgage provides that upon default, Chambers Bank may "make such payment or perform such acts for the account of and at the expense of [Borrowers]…."   Further, if Chambers Bank "shall expend any money chargeable to Mortgagor or subject to reimbursement by [Borrowers] under the terms of the Loan Instruments, [Borrowers] will, jointly and severally,

repay the same to [Chambers Bank] immediately at the place where the Note are [sic] payable, together with interest thereon at the highest rate permitted by applicable law."  *See* Exhibit E, Section 6.7.

### 4.    *The Guaranty Agreements*

To secure payment of the indebtedness represented by the Note, the Guarantors executed a series of Guaranty Agreements (collectively, the "Guaranties" or each individually, a "Guaranty") (the Note, the Modification Agreement, the Loan Agreement, the Guaranties, and the Mortgage collectively referred to herein as the "Loan Documents"), in which each Guarantor personally guaranteed the payment of the Note to the extent set forth therein.  True and correct copies of the Guaranties, as amended and restated, are attached to Chambers Bank's Statement of Undisputed Facts collectively as Exhibit "E".  By way of the Guaranties, each Guarantor also guaranteed all amounts "incurred by Lender to protect or preserve, or maintain the priority of, Lender's lien on or security interest in, any collateral given by Borrower to Lender to secure the Note…."   The extent of each Guarantor's obligations under each Guaranty is more specifically described in Chambers Bank's Statement of Undisputed Facts at Paragraphs 16-22.

As set forth in more detail below, the Borrowers and the Guarantors are in default pursuant to the terms of the Loan Documents, and Chambers Bank is accordingly entitled to obtain personal judgments against the Borrowers and the Guarantors.  *See* Affidavit of G. Robert Harrison, Jr., Exhibit "G" to Chambers Bank's Statement of Undisputed Facts.  In connection with the Loan, as of June 20, 2008, the principal amount owed under the Loan Documents is $10,135,000.00.  Accrued but unpaid interest as of June 20, 2008 amounts to $786,504.69, and continues to accrue at the daily rate of $2,568.46.  Late fees are currently outstanding in the

amount of $5,000.00, and other unpaid fees are in the amount of $713.00.  *See* Exhibit F, at Paragraph 27.

In addition to the above described payment defaults, certain alleged materialmen lien claimants (the "Lien Claimants") have encumbered the Property and have alleged that their asserted liens are paramount to the Mortgage.   The encumbrance by the Lien Claimants constitutes a material default under the Mortgage and the Loan Agreement.   As a result, Chambers Bank has incurred legal and other fees and expenses in connection with defending the priority of the Mortgage against the Lien Claimants.   Chambers Bank may also incur costs in preserving the collateral set forth within the Mortgage, and in resolving issues related to the priority of interest related thereto.  *See* Exhibit F, at Paragraph 30.  As will be more fully stated below, the Borrowers and Guarantors are liable for all outstanding amounts related to principle and interest under the Loan, for all amounts used to preserve the collateral that forms the basis of the Mortgage, and for all attorney's fees and costs incurred throughout the course of this action. Because there is no genuine issue of any material fact with respect to any of these issues, Chambers Bank is entitled to summary judgment.

## II.  ARGUMENT AND AUTHORITY

### A.     Summary Judgment Standard

Summary judgment is proper if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See Sappington v. Skyjack, Inc.*, 512 F.3d 440, 445 (8th Cir. 2008); *see also* Fed. R. Civ. P. 56(c).  When ruling on a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party.  *Sappington*, 512 F.3d at 445.  However, the "'nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for

trial.'" *FDIC v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997) (quoting *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 64 F.3d 1202, 1211 (8th Cir. 1995)).  Also, the "nonmoving party must do more than rely on allegations or denials in the pleadings, and the elements of its prima facie case must be supported by specific facts sufficient to raise a genuine issue for trial."  *Skare v. Extendicare Health Servs.*, 515 F.3d 836, 840 (8th Cir. 2008).

**B.     The Borrowers and the Guarantors are in Default on the Loan**

The Borrowers failed to make the interest payment due on October 1, 2007, in the amount of $236,298.22 in accordance with the terms of the Note.  *See* Exhibit F, at Paragraph 21. Accordingly, an event of default has occurred pursuant to the terms of the Note, and the Loan Agreement.  *See* Exhibit A; *see also* Exhibit C.  On November 26, 2007, Chambers Bank sent correspondence to each of the Borrowers and each of the Guarantors (the "Default Letter") indicating that the Borrowers would be held in default under the terms of the Loan Documents if: (a) full payment of the October 1, 2007 interest payment was not made within ten (10) days, and (b) each of the lien claims encumbering the Property was not satisfied within a period of thirty (30) days.  A true and correct copy of the Default Letter is attached to Chambers Bank's Statement of Undisputed Facts as Exhibit "G".  In the Default Letter, Chambers Bank notified the Borrowers and the Guarantors that the Loan would be accelerated and become immediately due and payable if the defaults noted above were not timely cured, and further demanded payment of all amounts owed in the event that the specified defaults were not timely cured.  *See* Exhibit G.  The Borrowers have failed to cure the defaults identified in the Default Letter.  *See* Exhibit F, at Paragraph 26.  The Borrowers therefore continue to be in default, and the indebtedness owing under the Loan Documents has been accelerated.

No evidence or argument has been presented controverting the material allegations in Chambers Bank's Third-Party Complaint relating to the payment defaults of the Borrowers and Guarantors under the Loan.  No genuine issue of material fact exists, and Chambers Bank is entitled to personal judgments against the Borrowers for all sums owing in connection with the Loan, and to a personal judgment against each of the Guarantors to the extent allowed by the terms of the Guaranty executed by each.

In addition to the above described payment default, the Property, which is subject to the mortgage, has been encumbered by several Lien Claimants.  Several of the alleged liens have not been released and remain upon the Property.  *See* Exhibit F, at Paragraph 23.  Both the Loan Agreement and the Mortgage provide that Chambers Bank may take such action as is necessary to protect its interest under the Mortgage, and the costs of any such action shall be chargeable to the Borrowers.  Pursuant to the terms of both the Loan Agreement and the Mortgage, Chambers may also resolve any encumbrances upon the Property, and any amounts used for resolution of the same shall be chargeable to the Borrowers.  *See* Exhibit C, Sections 4.11, 4.17; *see also* Exhibit D, Sections 3.2, 6.7.  Although the amounts for resolution of such encumbrances has not yet been liquidated, no genuine issue of material fact remains to be determined with respect to the Borrowers liability for costs and attorney's fees expended in litigating title to the Property. Moreover, no genuine issue of material fact remains with respect to the Borrowers liability for any amounts paid to the Lien Claimants in satisfaction of the Lien Claimant's alleged liens, whether by way of compromise or by way of judgment.  Thus, this Court should grant partial summary judgment to Chambers Bank, finding that the Borrowers shall be liable for any such amounts once established.

In addition, the Guarantors have guaranteed all amounts due pursuant to the Note, in addition to all amounts incurred by Chambers Bank to maintain the priority of Chambers Bank's mortgage interest in the Property. *See* Exhibit E.  Accordingly, no genuine issue of material fact remains to be determined with respect to the Guarantors liability for any amounts paid to the Lien Claimants for resolution of the priority dispute as it relates to the collateral, whether said amounts are paid by way of compromise or by way of judgment.  Accordingly, this Court should grant partial summary judgment on the issue of the Guarantors liability for the same.

Finally, Chambers Bank has the right, under the Loan Documents and applicable law, to foreclose its interest in the Property.  Because issues relating to certain subordinate, junior, and inferior encumbrances against the Property are currently unresolved, Chambers Bank requests that any decree of foreclosure also address the validity and priority of those other encumbrances against the Property.  However, Chambers Bank requests that this Court recognize its right to foreclosure under the Loan Documents, that such right is absolute, and that Chambers Bank is entitled to a decree of foreclosure, but that such decree will be entered upon the resolution of all issues relating to the subordinate encumbrances against the Property.

## III. <u>CONCLUSION</u>

The Borrowers and the Guarantors are in default of their obligations in connection with the Loan.  Chambers Bank is entitled to judgment as a matter of law against the Borrowers and the Guarantors.  Chambers Bank is also entitled to the award of a reasonable attorneys' fee, court costs, and other legal expenses.  No genuine issue of material fact exists to be tried, and summary judgment in favor of Chambers Bank should be granted pursuant to Fed. R. Civ. P. 56.

Respectfully submitted,

Jason N. Bramlett, AB # 2002140
Seth M. Haines, AB # 2004068
FRIDAY, ELDREDGE & CLARK, LLP
3425 North Futrall Drive
Fayetteville, Arkansas 72703-4811
Telephone: (479) 695-1107
Facsimile: (479) 695-2147

*Attorneys for Chambers Bank of North Arkansas*

By: /s/ Jason N. Bramlett
    Jason N. Bramlett, Ark. Bar # 2002140

## <u>CERTIFICATE OF SERVICE</u>

I, Jason N. Bramlett, hereby certify that a copy of the foregoing was served upon each party entitled to receive electronic notice via the CM/ECF on this 20th day of June, 2008:


/s/ Jason N. Bramlett