IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| VITRO AMERICA, INC. d/b/a BINSWANGER GLASS | | PLAINTIFF |
| vs. | Case No. 07-5150 | |
| DIXIE CONSTRUCTION, LLC, et al. | | DEFENDANTS |

SEPARATE DEFENDANTS JOHN P. MARINONI
AND ELIZABETH F. MARINONI, CO-TRUSTEES OF
THE JOHN P. MARINONI 2006 REVOCABLE TRUST
AGREEMENT u/t/d JUNE 2, 2006 and JOHN P. MARINONI
AND ELIZABETH F. MARINONI, CO-TRUSTEES OF THE
ELIZABETH F. MARINONI 2006 REVOCABLE TRUST
AGREEMENT u/t/d JUNE 2, 2006
BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

### I. STATEMENT OF FACTS

The Separate Defendants John P. Marinoni and Elizabeth F. Marinoni, Co-Trustees of the John P. Marinoni 2006 Revocable Trust Agreement u/t/d June 2, 2006 and John P. Marinoni and Elizabeth F. Marinoni, Co-Trustees of the Elizabeth F. Marinoni 2006 Revocable Trust Agreement u/t/d June 2, 2006 (together, hereinafter referred to as the "Marinonis"), are part owners of a certain piece of real property ("Property") which multiple parties are claiming an interest in by virtue of either a materialman's lien or a mortgage. Among those claiming an interest as a materialman's lienholder are Vitro America, Inc. d/b/a Binswanger Glass ("Vitro"), Professional Air Systems, LLC ("Professional"), Campbell Electric, Inc. ("Campbell"), Flynt & Son Hardwood, Inc., ("Flynt"), Kitchen Distributors, Inc. ("Kitchen Distributors"), Johnson Mechanical

Contractors, Inc. ("Johnson"), Built-Well Construction Company ("Built-Well"), Don Mobley, d/b/a Mobley Architects, Inc. ("Mobley"), National Home Centers, Inc. ("National"), and Blew Land Surveying, Inc., d/b/a Blew and Associates, Inc. ("Blew") (collectively referred to hereinafter as the "Lien Claimants").

As more fully explained in the Brief in Support of Chambers Bank of North Arkansas's ("Chambers") Motion for Summary Judgment, each of the Lien Claimants, with the exception of Flint, executed individual Lockbox Agreements which purported to release the Lien Claimants from the notice and timing requirements associated with filing a lien under the Arkansas materialman's lien statutes. It is undisputed that neither of the Marinonis had any knowledge of the separate Lockbox Agreements until the same were attached to the various pleadings of the Lien Claimants. *See* Exhibits "A" and "B."

It is further undisputed that through the Amended and Restated Co-Tenancy Agreement and the Management Agreement, the Marinonis did in fact authorize Dixie Real Estate, LLC to act as the Marinonis' agent in managing the Property. *See* Exhibits "A-D." However, as evidenced from the Lockbox Agreements attached to the Lien Claimants respective pleadings herein, Dixie Real Estate, LLC was not a signatory on any of those agreements.

In addition to seeking to foreclose their respective liens, several of the Lien Claimants, including Vitro, Professional, Campbell, Builtwell, Johnson, Kitchen and National (collectively referred to hereinafter as the "Unjust Enrichment

Claimants") have all asserted claims against the Marinonis alleging damages for unjust enrichment and/or quantum meruit.

Since the facts above are agreed upon, the Marinoni's now bring their Motion for Partial Summary Judgment and Brief in Support thereof asking the Court to declare the liens invalid and to dismiss the unjust enrichment claims as a matter of law.

## II. SUMMARY JUDGMENT

Summary judgment is proper if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Sappington v. Skyjack, Inc.*, 512 F.3d 440, 445 (8th Cir. 2008); *see also* Fed. R. Civ. P. 56(c). When ruling on a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party. *Sappington*, 512 F.3d at 445. However, the "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." *FDIC v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997) (quoting *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 64 F.3d 1202, 1211 (8th Cir. 1995)). Also, the "nonmoving party must do more than rely on allegations or denials in the pleadings, and the elements of its prima facia case must be supported by specific facts sufficient to raise a genuine issue for trial." *Skare v. Extendicare Health Servs.*, 515 F.3d 836, 840 (8th Cir. 2008).

## III. ARGUMENT

**A.     The Lien Claimant's Liens Are Invalid as a Matter of Law**

There has been neither a scintilla of evidence nor any allegations by any of the parties to this matter that the Marinonis knew about the Lockbox Agreements, much less approved or executed the same. Without the Marinoni's signature on the Lockbox Agreements, those agreements are unenforceable as to the Marinonis as a violation of the statute of frauds. The Arkansas Statute of Frauds indicates in relevant part that:

> (a) Unless the agreement, promise, or contract, or some memorandum or note thereof, upon which an action is brought is made in writing and signed by the party to be charged therewith, or signed by some other person properly authorized by the person sought to be charged, no action shall be brought to charge any:
>
> * * *
>
> (4) Person upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them;
>
> * * *
>
> (6) Person upon any contract, promise, or agreement that is not to be performed within one (1) year from the making of the contract, promise, or agreement.
>
> * * *
>
> (d)(1) No action may be maintained by or against any person or entity on any agreement to extend credit or to renew or modify existing credit in an amount greater than ten thousand dollars ($10,000) or to make any other accommodation relating to such credit, unless the agreement is in writing and is signed by the party to be charged with the agreement, or the duly authorized agent of such party.
>
> Ark. Code Ann. § 4-59-101.

In the matter at hand the Lockbox Agreements violate at least three separate provisions of the statute of frauds and as such, the liens should be dismissed as a matter of law.  To begin with, by the Lockbox agreements purporting to waive certain statutory lien requirements in favor of the Lien Claimants, the agreement certainly dealt with an interest in or concerning the Property.  Further, by waiving the timing restrictions associated with filing liens, the Lockbox Agreements continued in perpetuity in violation of the statute of frauds.

The Lockbox Agreements also had the effect of extending credit or in the very least modifying and renewing the amount that was allegedly owed to the Lien Claimants.  An examination of the pleadings filed herein reveals that each Lockbox Agreement contained a promise to pay over $10,000.00 and that too is in violation of the statute of frauds.  Therefore, the Lockbox Agreements are invalid as to the Marinonis.

The Marinonis suspect that while it is undisputed that they had no knowledge of the Lockbox Agreements, the Lien Claimants will argue that certain signatories thereto (Dixie Development, Inc., Commerce Park II, LLC, Dixie Construction, LLC, Dr. Ben Israel, Nancy Israel, and Dixie Management and Investment, LP ("Dixie Entities")) were acting on behalf of the Marinonis. Ordinarily, agency is a question of fact to be determined by the trier of fact, but as in the present case, where the facts are undisputed and only one inference can be reasonably drawn from them, it becomes a question of law. *Evans v. White,* 284

Ark. 376, 378, 682 S.W.2d 733, 734 (1985). The burden is on the Lien Claimaints to prove the existence of the agency relationship. *See E.P. Dobson, Inc. v. Richard*, 17 Ark. App. 155, 158, 705 S.W.2d 893, 894 (1986).

While it is true that the Marinonis had indeed entered into a certain Amended and Restated Co-Tenancy Agreement and a Management Agreement authorizing Dixie Real Estate, LLC to act on their behalf in "all administrative, operational and management matters" related to the Property (*See* Exhibit "D"), Dixie Real Estate, LLC was not a signatory to the Lockbox Agreements. The Marinonis did not grant any of the Dixie Entities, which signed the agreements, the authority to act on the Marinonis' behalf in executing the same. *See* Exhibits "A" and "B." Thus none of the makers of those agreements had actual authority to bind the Marinonis.

None of the Dixie Entities that signed the agreements had any implied authority to do so either. The Management Agreement states that Dixie Real Estate, LLC agrees "to promptly inform Co-Tenants of any claims, fines, suits, proceedings, actions or causes of action with respect to the Project of which Manager has notice." *See* Exhibit "D," Section 2.1(5). The agreement goes on to state that Dixie Real Estate, LLC "shall obtain the consent of the Co-Tenants prior to making any single expenditure in connection with performing its duties hereunder in excess of $5,000.00." *See* Exhibit "D," Section 2.1(7).

Most tellingly, Dixie Real Estate, LLC expressly did not have the authority to "use the Project as collateral" or to "perform any act that would subject any

Owner to any liability to which such Owner has not consented." *See* Exhibit "D," Section 2.2(4) and (8). If Dixie Real Estate, LLC did not have the actual authority required the act on behalf of the Marinonis, the surely as a matter of law none of the Dixie Entities had any implied authority to act on the Marinonis' behalf.

The only type of agency left is that of apparent authority. Apparent authority exists when the principal (the Marinonis) knowingly permits the agent (the Dixie Entities) to assume authority or the principal holds the agent out as possessing the authority. *Arkansas Poultry Fed'n Ins. Trust v. Lawrence*, 34 Ark. App. 45, 52, 805 S.W.2d 653, 657 (1991). It is such authority as the agent appears to have by reason of the actual authority as a reasonably prudent man using diligence and discretions, in view of the principal's conduct, would naturally suppose the agent to possess. *Mack v. Scott*, 230 Ark. 510, 514, 323 S.W.2d 929, 931-32 (1959). Apparent authority exists only to the extent that it is reasonable for the third party (Lien Claimants) to believe that the agent is authorized. Restatement (Second) of Agency, §8 cmt. c (1957).

Apparent authority must be based upon the conduct of the alleged principal:

> To bind the principal to such a transaction, the one dealing with the agent must prove that the principal was responsible for the appearance of authority by doing something or permitting the agent to do something which reasonably led others, including the plaintiff, to believe that the agent had the authority he purported to have. If this is proved, the principal should have realized that his conduct would cause others to believe that the agent was authorized, and the principal and the other party are bound by the

> ordinary rules of contract, unless the other has notice that the agent was unauthorized.

W. Seavey, *The Law of Agency* § 8, at 13 (1964).

The Dixie Entities did not possess any actual authority to act on behalf of the Marinonis, thus a prudent man using diligence and discretions would not naturally suppose the Dixie Entities were able to bind the Marinonis to contracts that drastically affected the Marinonis liability under the law. In actuality, it was the Lien Claimants lack of diligence and discretion which caused them to enter into Lockbox Agreements purporting to affect ownership rights of the Property without obtaining the approval of all the owners of the Property.

Further, the Marinonis did not conduct themselves in such a manner as to give the Lien Claimants the impression that the Dixie Entities were their agent. *See* Exhibits "A" and "B." Something as simple as a phone call to the Marinonis from any of the Dixie Entities or the Lien Claimants or even Chambers whereby the Marinonis were advised of the negotiations leading up to the Lockbox Agreements might lead to a tenuous argument that the apparent authority existed in the Lien Claimants' minds. However no evidence exists or has been alleged which would suggest the Marinonis knew about the Lockbox Agreements, consented to the Dixie Entities acting on their behalf in regard to the agreements, or held the Dixie Entities out to the Lien Claimants as acting on their behalf.

Due to the fact that the Marinonis did not sign the Lockbox Agreements and no authority existed for the Dixie Entities to act on their behalf in so doing, this Court should grant the declaratory judgment requested in Chamber's Counterclaim, Cross-Claim and Third Party Complaint declaring the Lockbox Agreements' provisions relating to the tolling of the time periods to file the materialman's liens or waiver of any notice provision are nullified, or in the very least, nullified as to the Marinonis.

In addition, based on the arguments advanced in Section II(C) of Chamber's Brief in Support of Motion for Summary Judgment Against Certain Lien Claimants, which is incorporated herein as if set out word for word, the Court should find the Lien Claimants liens invalid as a matter of law.

### B. The Unjust Enrichment Claims Should Be Dismissed as to the Marinonis as a Matter of Law.

The Unjust Enrichment Claimants all assert alternative causes of action for unjust enrichment against the Marinonis.[1] However, these claims are contrary to Arkansas law and as such the Marinonis are entitled to summary judgment dismissing those claims.

In *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 210 S.W.3d 101 (2005), the Arkansas Supreme Court addressed whether a subcontractor could assert a cause of action for unjust enrichment against a

---

[1] National alleges unjust enrichment as a cause of action in its Counterclaim and Cross Claim but only against Dixie Development, Inc. National also alleges quantum meruit against "Dixie Development and any other party that may claim an interest in [National's] materials and supplies furnished to and for the Real Property." Therefore, the Marinonis have included National as an "Unjust Enrichment Claimant."

property owner with whom no privity of contract existed. In *Servewell*, when a subcontractor's lien was declared invalid, the subcontractor alleged that as a result of its improvements, the value of the property had been enhanced and thus the subcontractor was entitled to damages under the equitable doctrine of unjust enrichment from a property owner. *Id.* at 612, 210 S.W.3d at 111-112.

> In defining unjust enrichment, the Arkansas Supreme Court stated:
>
> It is the principle that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. *However, the concept of unjust enrichment has no application when an express written contract exists.*

*Id.* at 612, 210 S.W.3d at 112 (emphasis added and internal citations omitted).

The Supreme Court ultimately found that the subcontractor could not recover from the property owner under an unjust enrichment theory when a valid and enforceable contract existed between the subcontractor and the general contractor. *Id.* In the present case, its is undisputed that all of the Unjust Enrichment Claimants have valid and enforceable contracts with Dixie Construction, LLC and/or Dixie Development, Inc as a general contractor. Thus, the Unjust Enrichment Claimants are bound by the general rule recognized in *Servewell* that one cannot recover in quasi-contract when an express contract exists and governs the matter. It follows that the unjust enrichment claims against the Marinonis should be dismissed as a matter of law.

## IV. CONCLUSION

For all the above reasons, the Marinonis respectfully request that this Court grant its motion for partial summary judgment in accordance with Fed. R. Civ. P. 56.

Respectfully Submitted,

KEITH, MILLER, BUTLER,
   SCHNEIDER & PAWLIK, PLLC
     224 South 2nd St.
     Rogers, AR 72756
     Telephone: (479) 621-0006
     Telecopier: (479) 631-6890


/s/ G. Nicholas Arnold
G. Nicholas Arnold
AR Lic. No. 2004170
narnold@attorneys.com

*Attorneys for John P. Martinoni and Elizabeth F. Marinoni, co-trustees of the John P. Marinoni 2006 Revocable Trust Agreement u/t/d June 2, 2006 and the Elizabeth F. Marinoni 2006 Revocable Trust Agreement u/t/d June 2, 2006; Separate Defendants*

## CERTIFICATE OF SERVICE

  I, G. Nicholas Arnold, state that I have on this 20th day of June, 2008, served a true and correct copy of the above and foregoing instrument to each party entitled to receive electronic notice via the CM/ECF system.

                  /s/ G. Nicholas Arnold
                  Ark. Bar. No 2004170