IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

VITRO AMERICA, INC. d/b/a
BINSWANGER GLASS                                          PLAINTIFF

          V.                    CIVIL NO. 07-5150

DIXIE CONSTRUCTION, LLC, *et al.*                         DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Chambers Bank's Motion for Summary Judgment Against Borrowers and Guarantors (Doc. 242), Chambers Bank's Motion for Summary Judgment Against Lien Claimants (Doc. 230), and Chambers Bank's Motions for Default Judgment Against David Oland and David Tipton (Docs. 202-03). For the reasons reflected herein, the Motion for Summary Judgment Against Borrowers and Guarantors is GRANTED, the Motion for Summary Judgment Against Lien Claimants is DENIED AS MOOT, and the Motions for Default Judgment are GRANTED.

### A. Background

This case arises out of the construction of a commercial office building known as Commerce Park II (the Property) in Fayetteville, Arkansas, and owned by Commerce Park II, LLC (CP II); Next Chapter Resources, LLC (NCR); Prime Property Investments, LLC (Prime); John P. Marinoni and Elizabeth F. Marinoni (collectively, the Owners). Chambers Bank of North Arkansas (Chambers) loaned the Owners $10,135,000.00 to acquire the property and construct an

office building. The Loan was guaranteed by Dixie Management & Investment Limited Partners (Dixie Management); Ben Israel, Nancy Israel, Tommy Muccio, Nancy Muccio, Thomas Fath, and Noriko Fath (collectively, the Guarantors)[1]. The Owners subsequently defaulted on the loan, and this litigation ensued.

Dixie Construction, LLC, was the general contractor. Numerous subcontractors and material providers filed liens against the property after failing to receive payment for their services, to include, Vitro America, Inc. d/b/a Binswanger Glass (Vitro); Campbell Electric, Inc. (Campbell); Kitchen Distributors, Inc. (Kitchen); Built-Well Construction Company (Built-Well) and National Home Centers, Inc. (NHC).

In an effort to satisfy the lien claimants, CP II, Dixie Construction, Dixie Development, Inc.; Dixie Management; Ben Israel, Nancy Israel, Elite Title and Chambers entered into Lockbox Agreements with some of the lien claimants in order to obtain permanent financing to complete construction and pay the lien claimants. However, financing was not obtained, and the lien claimants were not paid in accordance with the Lockbox Agreements.

**B. Standard of Review**

In determining whether summary judgment is appropriate, the Court must view the facts and inferences in the light most favorable to the non-moving party. *See Rabushka v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997). The moving party bears the burden

---

[1] Other guarantors previously settled their claims.

of establishing the absence of issues of material fact in the record and of establishing that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 316 (1986).

### C. Chambers Bank's Motion for Summary Judgment Against Borrowers and Guarantors (Doc. 242)

Chambers seeks judgments against CP II, NCR, Prime and the Marinonis (the Borrowers) for all sums owing in connection with the loan due to their default and against Dixie Management, the Israels, the Muccios and the Faths[2] (the Guarantors) to the extent allowed by the terms of the Guaranty executed by each. Chambers also seeks to recover its costs and attorney's fees expended in litigating title to the Property from the Borrowers. Chambers further seeks any amounts paid to the Lien Claimants in satisfaction of their liens from the Borrowers and Guarantors. Finally, Chambers requests the Court recognize its right to foreclosure at this time with a decree to be entered upon resolution of all issues relating to priority of any encumbrances.

NCR and the Muccios dispute that the Guaranty Agreements obligate them to cure up to fifty percent of the Borrowers' debt under the Note and that Chambers Bank has incurred legal fees and costs in connection with defending the priority of the mortgage against lien holders. (Docs. 330-332). NCR and the Muccios

---

[2] Chambers also sought judgment against the Rhynes, Trzeciaks, Mobleys, Threejack, LLC; and M and R Investments, LLC; however, these parties have settled their claims with Chambers.

contend they understood their collective obligations under the Note were not to exceed the proportion of NCR's ownership in the project. NCR and the Muccios further contend that the Owners' title insurance policy carrier paid for the fees and costs associated with defendant the priority of Chambers' mortgage.

The Marinonis admit Chambers is entitled to summary judgment on Count One of its Third-Party Complaint but contend a genuine issue of material fact exists with respect to their liability for the amounts Chambers "incurred to preserve" its mortgage interest in the Property and whether any such costs were necessary, proper and or reasonable (Docs. 341-42). Prime and the Faths concur (Docs. 343-45).

Article IV, Section 4.11 of the Loan Agreement provides "[l]ender may advance and incur such expenses as Lender deems necessary for the completion of construction of the Improvements and to preserve the Premises and any other security for the Loan, and such expenses, even though in excess of the amount of the Loan, shall be secured by the Mortgage and be payable to Lender upon demand." (Doc. 245, Ex. C). Section 4.17 states that "[l]ender may pay all necessary and reasonable expenses, including reasonable attorneys' fees and expenses incurred in connection with [any action purporting to affect the Loan, the Premises, or the respective rights and obligations of Lender and Borrower] which Borrower agrees to repay to Lender upon demand. (Doc. 245, Ex. C). Further, the Guaranty Agreements signed by Next, Muccios, Prime and

the Faths speak for themselves. They state: ..."Guarantors' obligations pursuant to this Guaranty Agreement shall in no case exceed an amount which is equal to fifty percent (50.00%) of all amounts due pursuant to the Note, including principal, interest and charges in addition to principal and interest as described herein. (Doc. 245, Ex. E). The amount was 21.70% for the Faths. (Doc. 245, Ex. E).

The Court finds that no genuine issues of material fact exist as to liability in this matter. Accordingly, Chambers' Motion is GRANTED (Doc. 242) to the extent that it is entitled to a judgment against the Borrowers for all sums owing in connection with the Loan and against the Guarantors to the extent allowed by the terms of the Guaranty executed by each; specifically, not to exceed 50% as to Dixie Management, the Israels and the Muccios (Dixie Management and the Israels did not respond to the Motion), and 21.70% as to Prime and the Faths. Additionally, the Court finds that the Borrowers and Guarantors are liable for any amounts paid to the Lien Claimants in satisfaction of the liens and for costs and attorney's fees expended in litigating title to the Property. Finally, the Court finds that Chambers is entitled to a decree of foreclosure with such decree to be entered upon the resolution of all issues relating to the subordinate encumbrances against the Property.

### D.    Chambers Bank's Motion for Summary Judgment Against Lien Claimants (Doc. 230)

Chambers moved for summary judgment against numerous lien

claimants with respect to the priority of Chambers Bank's mortgage interest. Campbell filed a motion to strike certain exhibits to this Motion. Chambers has since advised the Court it has settled the issue of priority with these lien claimants. Accordingly, these Motions (Docs. 230 & 286) as well as Chambers' Motion for Enlargement of Time to File Supplement to the motion against Campbell Electric (Doc. 237) are DENIED AS MOOT.

### E. Chambers Bank's Motions for Default Judgment Against David Oland and David Tipton (Docs. 202-03)

The Court, being well and sufficiently advised, finds that the motions for default judgment against David Oland and David Tipton (Docs. 202-03) should be GRANTED. Accordingly, any lien upon the Property filed by Oland or Tipton shall be subject to the mortgage interest of Chambers.

IT IS SO ORDERED this 1st day of August, 2008

/s/ Robert T. Dawson
**HONORABLE ROBERT T. DAWSON**
**UNITED STATES DISTRICT JUDGE**