IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

VITRO AMERICA, INC. d/b/a BINSWANGER GLASS          **PLAINTIFF**

Case No. 07-5150

vs.

DIXIE CONSTRUCTION, LLC; et al.                     **DEFENDANTS**

CAMPBELL ELECTRIC, INC.                             **COUNTER-CLAIMANT**
                                                    **CROSS-CLAIMANT AND**
vs.                                                 **THIRD PARTY PLAINTIFF**

DIXIE CONSTRUCTION, LLC; et al.                     **CROSS-DEFENDANTS**

DIXIE DEVELOPMENT, INC., et al.                     **THIRD PARTY DEFENDANTS**


CHAMBERS BANK OF NORTH ARKANSAS                     **COUNTER-CLAIMANT**
                                                    **CROSS-CLAIMANT AND**
vs.                                                 **THIRD PARTY PLAINTIFF**

VITRO AMERICA, INC. d/b/a BINSWANGER GLASS          **COUNTER-DEFENDANT**

DIXIE MANAGEMENT & INVESTMENT LIMITED               **CROSS-DEFENDANTS**
PARTNERS; BEN ISRAEL; NANCY ISRAEL; PRIME
PROPERTY INVESTMENTS, LLC; NEXT CHAPTER
RESOURCES, LLC; COMMERCE PARK II, LLC;
JOHN P. MARINONI AND ELIZABETH F. MARINONI,
CO-TRUSTEES OF THE ELIZABETH F. MARINONI
2006 REVOCABLE TRUST AGREEMENT u/t/d/ JUNE
2, 2006; JOHN P. MARINONI AND ELIZABETH F.
MARINONI, CO-TRUSTEES OF THE JOHN P.
MARINONI 2006 REVOCABLE TRUST AGREEMENT
u/t/d JUNE 2, 2006; TOM MUCCIO; CAMPBELL
ELECTRIC, INC.; FLYNT & SON HARDWOOD,
INC.; JOHNSON MECHANICAL CONTRACTORS,
INC.; KITCHEN DISTRIBUTORS, INC.; and BUILT-
WELL CONSTRUCTION COMPANY

(continued on next page)

DECREE GRANTING CHAMBERS BANK OF NORTH ARKANSAS FORECLOSURE AND PERSONAL
JUDGMENTS AGAINTS BORROWERS AND GUARANTORS – Page 1 of 28
653905_1.DOC
FILENAME

**CHAMBERS BANK OF NORTH ARKANSAS**

vs.

**THE BENNY BERT ISRAEL REVOCABLE TRUST, u/t/d JUNE 17, 1997; THE NANCY KAYE ISRAEL REVOCABLE TRUST, u/t/d JUNE 17, 1997; NANCY S. MUCCIO; THE MUCCIO JOINT REVOCABLE TRUST, u/t/d AUGUST 25, 1999; THOMAS FATH; NORIKO FATH; THOMAS R. RHYNE; JOANNE W. RHYNE; DAVID TRZECIAK; TAMARA TRZECIAK; THREEJACK, LLC; DON MOBLEY; CLAUDIA MOBLEY; M AND R INVESTMENTS, LLC; CONCRETE SERVICES OF NORTHWEST ARKANSAS, INC.; DAVID OLAND, d/b/a DAVID OLAND WOODWORKING; DUNK FIRE & SECURITY, INC.; DON MOBLEY, d/b/a MOBLEY ARCHITECTS, INC.; STONE PANELS, INC.; NATIONAL HOME CENTERS, INC.; OTIS ELEVATOR COMPANY; HUTCHENS CONSTRUCTION COMPANY; OAKS BROTHER'S, INC.; MILLER COMMERCIAL FLOORING, INC.; DAVID TIPTON, d/b/a TIPTON CONSTRUCTION; FELIX THOMSON COMPANY; C & C INDUSTRIAL & COMMERCIAL CLEARNING SERVICES, LLC; BLEW LAND SURVEYING, INC, d/b/a BLEW AND ASSOCIATES, INC.; METRO BUILDERS SUPPLY OF ROGERS, INC.; AMERICAN AIR CONDITIONING & MECHANICAL, INC.; THE UNITED STATES OF AMERICA**

**THIRD-PARTY PLAINTIFF**

**THIRD-PARTY DEFENDANTS**

## DECREE GRANTING CHAMBERS BANK OF NORTH ARKANSAS FORECLOSURE AND PERSONAL JUDGMENTS AGAINST BORROWERS AND GUARANTORS

On this day, this cause came on to be heard, having been submitted to the Court upon the

Complaint with exhibits [Docket No. 90] filed by Chambers Bank of North Arkansas (the

"Plaintiff" or "Chambers Bank"), Motion for Summary Judgment Against Borrowers and

Guarantors [Docket No. 242], Statement of Undisputed Facts in Support of Motion for Summary

Judgment Against Borrowers and Guarantors [Docket No. 245], and the Brief in Support of

Motion for Summary Judgment Against Borrowers and Guarantors [Docket No. 246] (collectively, the "Motion for Summary Judgment"), from all of which, and other matters, including the agreements of the parties to this cases as announced or filed of record, proof and things before the Court, the Court finds and orders as follows:

## I.
## THE PARTIES

1.    Plaintiff Chambers Bank is an Arkansas state chartered bank with its principal place of business in Fayetteville, Washington County, Arkansas.

2.    Defendant Commerce Park II, LLC ("Commerce") is an Arkansas limited liability company with its principal place of business in Fayetteville, Washington County, Arkansas.

3.    Defendant Next Chapter Resources, L.L.C. ("NCR") is an Arkansas limited liability company with its principal place of business in Fayetteville, Washington County, Arkansas.

4.    Defendant Prime Property Investments, LLC ("Prime") is a Nevada limited liability corporation that maintains its principal place of business in either the State of Nevada or the State of California.

5.    Defendant John P. Marinoni ("Mr. Marinoni") is an individual and resident of the State of Arkansas and, upon information and belief, resides in Washington County, Arkansas, who subsequently transferred his interest in the Property (as defined below) to the John P. Marinoni 2006 Revocable Trust, u/t/d June 2, 2006 (the "Mr. Marinoni Trust").

6.    Defendant Elizabeth F. Marinoni ("Mrs. Marinoni") is an individual and resident of the State of Arkansas and, upon information and belief, resides in Washington County, Arkansas, who subsequently transferred her interest in the Property (as defined below) to the Elizabeth F. Marinoni 2006 Revocable Trust, u/t/d June 2, 2006 (the "Mrs. Marinoni Trust").

7.    Hereinafter, Commerce, NCR, Prime, Mr. Marinoni, Mrs. Marinoni, the Mr. Marinoni Trust, and the Mrs. Marinoni Trust shall be referred to collectively as the "Borrowers" and each individually as a "Borrower".

**B.    The Guarantors of the Indebtedness.**

8.    Defendant Dixie Management & Investment Limited Partners ("Dixie") is an Arkansas limited partnership with a principal place of business in Fayetteville, Washington County, Arkansas.

9.    Ben B. Israel ("Mr. Israel") is an individual and resident of the State of Arkansas and resides in Washington County, Arkansas.

10.    Nancy Kaye Israel ("Mrs. Israel") (Mr. Israel and Mrs. Israel collectively the "Israels") is an individual and resident of the State of Arkansas and resides in Washington County, Arkansas.

11.    The Benny Bert Israel Revocable Trust, u/t/d June 17, 1997, as amended (the "Mr. Israel Trust"), is a revocable trust formed under the laws of the State of Arkansas, and whose trustees are Mr. Israel and Mrs. Israel.

12.    The Nancy Kaye Israel Revocable Trust, u/t/d June 17, 1997, as amended (the "Mrs. Israel Trust"), is a revocable trust formed under the laws of the State of Arkansas, and whose trustees are Mr. Israel and Mrs. Israel.

13.    Tommy A. Muccio ("Mr. Muccio") is an individual and resident of the State of Arkansas and resides in Washington County, Arkansas.

14.    Nancy S. Muccio ("Mrs. Muccio") is an individual and resident of the State of Arkansas and resides in Washington County, Arkansas.

15.     The Muccio Joint Revocable Trust, u/t/d August 25, 1999 (the "Muccio Trust"), is a revocable trust formed under the laws of the State of Arkansas, and whose trustees are Mr. Muccio and Mrs. Muccio.

16.     Upon information and belief, Thomas Fath ("Mr. Fath") is an individual and resident of San Diego County, California.

17.     Upon information and belief, Noriko Fath ("Mrs. Fath") is an individual and resident of San Diego County, California.

18.     Thomas R. Rhyne ("Mr. Rhyne") is an individual and resident of the State of Arkansas and resides in Washington County.

19.     Joanne W. Rhyne ("Mrs. Rhyne") is an individual and resident of the State of Arkansas and resides in Washington County.

20.     David Trzeciak ("Mr. Trzeciak") is an individual and resident of the State of Arkansas and resides in Washington County.

21.     Tamara Trzeciak ("Mrs. Trzeciak") is an individual and resident of the State of Arkansas and resides in Washington County.

22.     Threejack, LLC ("Threejack") is an Arkansas limited liability company with its principal place of business in Fayetteville, Washington County, Arkansas.

23.     Don Mobley ("Mr. Mobley") is an individual and resident of the State of Arkansas and resides in Washington County.

24.     Claudia Mobley ("Mrs. Mobley") is an individual and resident of the State of Arkansas and resides in Washington County.

25.     M And R Investments, LLC ("M&R") is an Arkansas limited liability company with its principal place of business in Fayetteville, Washington County, Arkansas. Those

individuals and entities referred to in paragraphs 8 through 25 hereof shall be referred to collectively as the "Guarantors" and each individually as "Guarantor".

### C. The Lien Claimants.

26. Defendant Vitro America, Inc., d/b/a Binswanger Glass ("Vitro") is a corporation organized and existing under the laws of the state of Delaware that maintains its principal place of business in Tennessee. As established by this Court's Order entered on August 4, 2008 [Docket No. 385] (the "August 4 Order"), Vitro has a valid and properly perfected materialman's lien against the Property and has voluntarily subordinated its lien to the interest of Chambers Bank.

27. Defendant Campbell Electric, Inc. ("Campbell") is a corporation organized and existing under the laws of the state of Arkansas and maintains a principal place of business in Arkansas. As established by the August 4 Order, Campbell has a valid and properly perfected materialman's lien in the amount of $206,291.71 against the Property and has voluntarily subordinated its lien to the interest of Chambers Bank.

28. Defendant David Oland, d/b/a David Oland Woodworking ("Oland") is a corporation organized and existing under the laws of the state of Arkansas and maintains a principal place of business in Arkansas. Oland has been found in default upon the Complaint of Chambers Bank by way of that certain Order entered by this Court on August 1, 2007 [Docket No. 377] and, therefore, has no interest in the Property.

29. Defendant Flynt & Son Hardwood, Inc. ("Flynt") is a corporation organized and existing under the laws of the state of Arkansas and maintains a principal place of business in Arkansas. Flynt has previously claimed some right or title in the Property by way of mechanic's

or materialmen's lien and has voluntarily subordinated any such claim to the interest of Chambers Bank.

30.     Defendant Kitchen Distributors, Inc. ("Kitchen Distributors") is a corporation organized and existing under the laws of the state of Arkansas and maintains a principal place of business in Arkansas. Kitchen Distributors has previously claimed some right or title in the Property by way of mechanic's or materialmen's lien and has voluntarily subordinated any such claim to the interest of Chambers Bank.

31.     Defendant Built-Well Construction, Inc. ("Built-Well") is a corporation organized and existing under the laws of the state of Arkansas and maintains a principal place of business in Arkansas. As established by the August 4 Order, Built-Well has a valid and properly perfected materialman's lien in the amount of $249,637.48 against the Property and has voluntarily subordinated its lien to the interest of Chambers Bank.

32.     Defendant Dunk Fire & Security, Inc. ("Dunk") is a corporation organized and existing under the laws of the state of Arkansas and maintains a principal place of business in Arkansas. Dunk has previously claimed some right or title in the Property by way of mechanic's or materialmen's lien and has voluntarily subordinated any such claim to the interest of Chambers Bank.

33.     Defendant Don Mobley, d/b/a Mobley Architects, Inc. ("Mobley") is a corporation organized and existing under the laws of the state of Arkansas and maintains a principal place of business in Arkansas. Mobley has previously claimed some right or title in the Property by way of mechanic's or materialmen's lien and has voluntarily subordinated any such claim to the interest of Chambers Bank.

34.     Defendant Stone Panels, Inc. ("Stone") is a corporation organized and existing under the laws of the state of Texas. Stone has previously claimed some right or title in the Property and has voluntarily subordinated any such claim to the interest of Chambers Bank.

35.     Defendant National Home Centers, Inc. ("National") is a corporation organized and existing under the laws of the state of Arkansas and maintains a principal place of business in Arkansas. National has previously claimed some right or title in the Property by way of mechanic's or materialmen's lien and has voluntarily subordinated any such claim to the interest of Chambers Bank.

36.     Defendant Otis Elevator Company ("Otis") is a corporation organized and existing under the laws of the state of Arkansas and maintains a principal place of business in Arkansas. Otis has previously claimed some right or title in the Property by way of mechanic's or materialmen's lien and has voluntarily subordinated any such claim to the interest of Chambers Bank.

37.     Defendant Oaks Brother's, Inc. ("Oaks") is a corporation organized and existing under the laws of the state of Arkansas and maintains a principal place of business in Arkansas. Oaks has previously claimed some right or title in the Property by way of mechanic's or materialmen's lien and has voluntarily subordinated any such claim to the interest of Chambers Bank.

38.     Upon information and belief, Defendant David Tipton, d/b/a Tipton Construction ("Tipton") maintains its principal place of business in Arkansas. Tipton has been found in default upon the Complaint of Chambers Bank by way of that certain Order entered by this Court on August 1, 2007 [Docket 377] and, therefore, has no interest in the Property.

39.     Defendant Felix Thomson Company ("Felix") is a corporation organized and existing under the laws of the state of Arkansas and maintains a principal place of business in Arkansas. Felix has previously claimed some right or title in the Property by way of mechanic's or materialmen's lien and has voluntarily subordinated any such claim to the interest of Chambers Bank.

40.     Defendant C & C Industrial & Commercial Cleaning Services, LLC ("C&C") is an entity organized and existing under the laws of the state of Arkansas and maintains a principal place of business in Arkansas. C&C has previously claimed some right or title in the Property. C&C has previously disclaimed any interest in the Property.

41.     Defendant Blew Land Surveying, Inc., d/b/a Blew and Associates, Inc. ("Blew") is a corporation organized and existing under the laws of the state of Arkansas and maintains a principal place of business in Arkansas. Blew has disclaimed any claim of title in the Property.

42.     Defendant Metro Builders Supply of Rogers, Inc. ("Metro Builders"), a duly formed Arkansas entity, with its principal place of business being located in Washington County. Metro Builders may claim some right or title in the Property by way of judgment. Metro Builders was served on March 12, 2008 as evidenced by that certain Affidavit of Service filed on March 20, 2008 [Docket No. 101]. Metro Builders has failed to file any responsive pleadings and has, therefore, disclaimed any interest in the Property.

43.     Defendant American Air Conditioning & Mechanical, Inc. ("American Air") is an Arkansas corporation with its principal place of business being located in Washington County. American Air may claim some interest in the Property by way of judgment. American Air was served on March 11, 2008 as evidenced by that certain Affidavit of Service filed on

March 20, 2008 [Docket No. 98]. American Air has failed to file any responsive pleadings and has, therefore, disclaimed any interest in the Property.

44.     The United States of America has disclaimed any interest in the Property.

45.     Vitro, Campbell, Oland, Flynt, Kitchen Distributors, Built-Well, Dunk, Stone, Mobley, National, Otis, Oaks, and Felix are hereinafter referred to collectively as the "Subordinate Lien Claimants".

### D.     Remaining Lockbox Contract Parties

46.     Dixie Construction, LLC ("Dixie Construction") is an Arkansas limited liability company with it's principal place of business being located in Fayetteville, Washington County, Arkansas.

47.     Dixie Development, Inc. ("Dixie Development") is an Arkansas Corporation with its principal place of business being located in Fayetteville, Washington County, Arkansas.

### E.     The Property

48.     The property upon which foreclosure is sought herein lies in Washington County, Arkansas.

### F.     Jurisdiction And Venue

49.     This court has subject matter jurisdiction over this matter because it involves a dispute between citizens of different states and the amount in controversy is in excess of $75,000.00. This court does have subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

50.     Venue lies in this district pursuant to 28 U.S.C. § 1391.

## II.
## THE CONSTRUCTION LOAN

51.     On December 22, 2005, Chambers Bank extended a loan to the Borrowers in the original principal amount of $10,135,000.00 (the "Loan").

52.     The Loan was extended for the purpose of acquiring the Property (as defined below) and for paying the direct and indirect costs associated with developing and constructing a commercial office building containing approximately 62,217 square feet of leasable space.

53.     The Loan is evidenced by that certain Land Acquisition, Land Development and Construction Promissory Note (the "Note"), dated December 22, 2005, stating a principal amount not to exceed the lesser of: (a) $10,135,000.00 and (b) an amount that would cause the Loan/Value Ratio (as defined in the Loan Agreement) to be in excess of Eighty Percent (80%). The Note and the terms and conditions thereof are enforceable against each Borrower and the Borrowers have no claim or defense regarding the enforceability of the same.

54.     Pursuant to the terms of the Note, the liability of the respective borrowers is limited as follows: (a) Commerce's proportional amount of liability is not to exceed 52.78% of all sums due under the Note; (b) the proportional liability of Mr. Marinoni, Mrs. Marinoni, the Mr. Marinoni Trust, and the Mrs. Marinoni Trust is not to exceed 3.17% of all sums due under the Note; (c) Prime's proportional amount of liability is not to exceed 21.7% of all sums due under the Note; (d) NCR's proportional amount of liability is not to exceed 25% of all sums due under the Note.

55.     The Note provides for a maturity date of the earlier of: (a) December 22, 2009 or (b) the date on which Chambers Bank declares all sums due and payable under the Note after the occurrence of an event of default (the "Maturity").

56.     The Note and other loan documents were amended and modified pursuant to that certain Loan Modification Agreement, dated December 22, 2006 (the "Modification Agreement"). The Modification Agreement and the terms and conditions thereof are enforceable

against each of the Borrowers and Guarantors and the Borrowers and Guarantors have no claim or defense regarding the enforceability of the same.

57.     The Note obligates the Borrowers to repay the Loan as set forth in paragraph 3 of the Note, as amended and modified by the Modification Agreement.

58.     Specifically, the Note obligates the Borrowers to make quarterly payments of accrued but unpaid interest based upon the terms of the Note until January 1, 2008. Thereafter, the Note requires the Borrowers to make monthly payments based upon the amortization schedule set forth within the Note.

59.     The balance of the unpaid principal and any accrued but unpaid interest owing on the Loan is due at the date of Maturity, as more specifically set forth in the Note.

60.     The Note contains a clause that includes waiver of protest, presentment for payment, demand, and notice of dishonor.

61.     In connection with the Loan, on December 22, 2005, the Borrowers and each Guarantor entered into that certain Land Acquisition, Land Development, Construction and Semi-Permanent Loan Agreement with Chambers Bank (the "Loan Agreement"). The Loan Agreement and the terms and conditions thereof are enforceable against each of the Borrowers and Guarantors and the Borrowers and Guarantors have no claim or defense regarding the enforceability of the same.

62.     The Loan Agreement delineates the events of default under the Loan, including, without limitation, the failure by the Borrowers to make any payment of principal or interest on the Note within ten (10) days after such payment is due or any failure by Borrowers to comply with any of the other terms or conditions specified in any of the Loan Documents (as defined below).

63.     The Note incorporates by reference each of the events of default set forth in Article I of the Loan Agreement.

64.     In addition, Article IV of the Loan Agreement further sets forth the Covenants and Agreements of Borrower and Manager. Section 4.11 specifically states that "Lender may advance and incur such expenses as Lender deems necessary for the completion of construction of the Improvements and to preserve the Premises and any other security for the Loan, and such expenses, even though in excess of the amount of the Loan, shall be secured by the Mortgage and be payable to the Lender *upon demand*." (emphasis added).

65.     Moreover, Section 4.17 of the Loan Agreement states that the "Lender may... defend any action or proceeding purporting to affect the... Premises, or respective rights and obligations of Lender and Borrower pursuant to this Loan Agreement. Lender may... pay all necessary and reasonable expenses, including reasonable attorneys' fees and expenses incurred in connection with such proceedings or actions, which Borrower agrees to repay...."

66.     Article V of the Loan Agreement sets forth the rights and remedies of the lender upon the borrower's default. Specifically, Section 5.01 states that "[u]pon the occurrence of any Event of Default, Lender shall have the right, in addition to any other right or remedy of Lender... (e) prosecute or defend any action or proceeding incident to the Premises, in Lender's name or in Borrower's name, as Lender elects." Further, Section 5.04 of the Loan Agreement states that "[a]ny funds of Lender used for any purpose referred to in this **Article V** or to perform any covenant or agreement of Borrower or Manager set forth in **Article IV** hereof which Borrower failed or refused to perform, shall constitute Advances secured by the Loan Instruments and shall bear interest at the Default Rate."

67.     To secure payment of the indebtedness represented by the Note, the Borrowers executed and delivered to Chambers Bank that certain Land Development, Construction Mortgage, Security Agreement and Fixture Filing (the "Mortgage") (the Note, the Modification Agreement, the Loan Agreement, the Guaranties, and the Mortgage collectively referred to herein as the "Loan Documents") dated December 22, 2005, and recorded with the Washington County Clerk and Ex-Officio Recorder on December 28, 2005, as File No. 2005-00057342. The Mortgage and the terms and conditions thereof are enforceable against each Borrower and the Borrowers have no claim or defense regarding the enforceability of the same.

68.     The Mortgage created a lien and security interest in favor of Chambers Bank in property that is located in Fayetteville, Washington County, Arkansas, and that is more particularly described as follows (and referred to herein as the "Property"):

> A part of the NE1/4 of the NW1/4 and a part of the SE1/4 of the NW1/4 of Section 25, in T-17-N, R-30-W, Washington County, Arkansas, described as beginning at the SE corner of the first mentioned 40 acre tract, and running thence North 10 links to the center line of an East-West public road; thence West along the center line of said road 4.48 chains; thence South 11.117 chains; thence East 4.48 chains to the East line of the last mentioned 40 acre tract; thence North on said line 11.017 chains to the place of beginning, containing 5 acres, more or less.

> Less & Except

> A part of the NE1/4 of the NW1/4, and a part of the SE1/4 of the NW1/4, all in Section 25, T-17-N, R-30-W, Washington County, Arkansas, more particularly described as follows: Beginning at the NE Corner of said SE1/4 of the NW1/4, Section 25: Run S 00°50'52" E, 21.06 feet; thence S 88°57'05" W, 295.68 feet; thence N 00°51' 01" W, 29.78 feet; thence N 89°21'48" E, 295.76 feet; thence S 00°50'52" E, 6.60 feet to the point of beginning, containing 0.19 acres, more or less.

69.     The Mortgage was granted to secure the following: (a) the Note; (b) all agreements, covenants and obligations of the Borrowers under any agreements or documents between the Borrowers and Chambers Bank, including, without limitation, the Loan Agreement;

and, (c) all sums advanced for the benefit of the Borrowers; and all other indebtedness of the Borrowers. Further, Section 3.2 of the Mortgage states that if the Property "shall be endangered or shall be attacked, directly or indirectly," Chambers Bank may "take all necessary and proper steps for defense of such interest, including... the *compromise or discharge of claims made against such interest, all at the expense of [the Borrowers].*" (emphasis added)

70.    The Mortgage also contains default provisions within Article V. Specifically, the Mortgage provides for an event of default if the Borrowers allow the Property to become encumbered, either voluntarily or involuntarily. *See* Exhibit D, Section 5.4. Finally, in Section 6.7, the Mortgage provides that upon default, Chambers Bank may "make such payment or perform such acts for the account of and at the expense of [Borrowers]...." Further, if Chambers Bank "shall expend any money chargeable to Mortgagor or subject to reimbursement by [Borrowers] under the terms of the Loan Instruments, [Borrowers] will, jointly and severally, repay the same to [Chambers Bank] immediately at the place where the Note are [sic] payable, together with interest thereon at the highest rate permitted by applicable law."

71.    To secure payment of the indebtedness represented by the Note, the Guarantors executed a series of Guaranty Agreements (collectively, the "Guaranties" or each individually, a "Guaranty"), in which each Guarantor personally guaranteed the payment of the Note to the extent set forth therein. Each Guaranty and the terms and conditions thereof are enforceable against each of the Guarantors and the Guarantors have no claim or defense regarding the enforceability of the same.

72.    By way of the Guaranties, each Guarantor also guaranteed all amounts "incurred by Lender to protect or preserve, or maintain the priority of, Lender's lien on or security interest in, any collateral given by Borrower to Lender to secure the Note...."

73.    Pursuant to the terms of the Guaranty executed by them, the collective obligations of Dixie, Mr. Israel, Mrs. Israel, the Mr. Israel Trust, and the Mrs. Israel Trust under the Guaranty is not to exceed an amount which is equal to fifty percent (50%) of all amounts due pursuant to the Note, including principal, interest and charges in addition to principal and interest, and all amounts incurred by Chambers Bank to protect or preserve, or maintain the priority of, Chambers Bank's lien on or security interest in, any collateral given by Borrower to Chambers Bank to secure the Note.

74.    Pursuant to the terms of the Guaranty executed by them, the collective obligations of Mr. Muccio, Mrs. Muccio, and the Muccio Trust under the Guaranty is not to exceed an amount which is equal to fifty percent (50%) of all amounts due pursuant to the Note, including principal, interest and charges in addition to principal and interest, and all amounts incurred by Chambers Bank to protect or preserve, or maintain the priority of, Chambers Bank's lien on or security interest in, any collateral given by Borrower to Chambers Bank to secure the Note.

75.    Pursuant to the terms of the Guaranty executed by them, the collective obligations of Mr. Fath and Mrs. Fath under the Guaranty is not to exceed an amount which is equal to twenty-one and seventy one-hundredths percent (21.70%) of all amounts due pursuant to the Note, including principal, interest and charges in addition to principal and interest, and all amounts incurred by Chambers Bank to protect or preserve, or maintain the priority of, Chambers Bank's lien on or security interest in, any collateral given by Borrower to Chambers Bank to secure the Note.

76.    Pursuant to the terms of the Guaranty executed by them, the collective obligations of Mr. Rhyne and Mrs. Rhyne under the Guaranty is not to exceed an amount which is equal to one percent (1.0%) of all amounts due pursuant to the Note, including principal, interest and

charges in addition to principal and interest, and all amounts incurred by Chambers Bank to protect or preserve, or maintain the priority of, Chambers Bank's lien on or security interest in, any collateral given by Borrower to Chambers Bank to secure the Note.

77.   Pursuant to the terms of the Guaranty executed by them, the collective obligations of Mr. Trzeciak, Mr. Trzeciak, and Threejack under the Guaranty is not to exceed an amount which is equal to six and thirty one-hundredths percent (6.30%) of all amounts due pursuant to the Note, including principal, interest and charges in addition to principal and interest, and all amounts incurred by Chambers Bank to protect or preserve, or maintain the priority of, Chambers Bank's lien on or security interest in, any collateral given by Borrower to Chambers Bank to secure the Note.

78.   Pursuant to the terms of the Guaranty executed by them, the collective obligations of Mr. Mobley and Mrs. Mobley under the Guaranty is not to exceed an amount which is equal to one percent (1.0%) of all amounts due pursuant to the Note, including principal, interest and charges in addition to principal and interest, and all amounts incurred by Chambers Bank to protect or preserve, or maintain the priority of, Chambers Bank's lien on or security interest in, any collateral given by Borrower to Chambers Bank to secure the Note.

79.   Pursuant to the terms of the Guaranty executed by it, the obligations of M and R Investments under the Guaranty is not to exceed an amount which is equal to one percent (1.0%) of all amounts due pursuant to the Note, including principal, interest and charges in addition to principal and interest, and all amounts incurred by Chambers Bank to protect or preserve, or maintain the priority of, Chambers Bank's lien on or security interest in, any collateral given by Borrower to Chambers Bank to secure the Note.

80.     The Borrowers failed to make the interest payment due on October 1, 2007, in the amount of $236,298.22 in accordance with the terms of the Note.

81.     The failure by Borrowers to make such payment within ten (10) days of it being due gives rise to an event of default under the terms of the Loan Documents.

82.     Additionally, multiple mechanics' and materialmens' liens were filed against the Property during the month of August 2007, which such liens have not been released. The encumbrances upon the Property created by such lien claims give rise to an additional event of default under the Mortgage, specifically Article 5.4 thereof, if not cured to Chambers Bank's satisfaction within thirty (30) days of the date notice is provided of the same.

83.     On November 26, 2007, Chambers Bank sent correspondence to each of the Borrowers and each of the Guarantors (the "Default Letter") indicating that the Borrowers and Guarantors would be held in default under the terms of the Loan Documents if: (a) full payment of the October 1, 2007 interest payment was not made within ten (10) days, and (b) each of the lien claims encumbering the Property was not satisfied within a period of thirty (30) days.

84.     In the Default Letter, Chambers Bank notified the Borrowers and the Guarantors that the Loan would be accelerated and become immediately due and payable if the defaults noted above were not timely cured.

85.     The Borrowers and Guarantors failed to cure the defaults identified in the Default Letter. The Borrowers and Guarantors are therefore in default, thus resulting in the acceleration of the indebtedness owing under the Loan Documents.

86.     As of August 4, 2008, the Borrowers and Guarantors owe to Chambers Bank the principal sum of $10,135,000.00, plus all accrued interest, and costs and attorneys' fees through the date of foreclosure. Through August 4, 2008, accrued but unpaid interest is in an amount

equal to $863,280.78, late fees are in the amount of $6,000.00, and other unpaid fees are in the amount of $13,768.36. Interest continues to accrue on the unpaid principal balance at the daily rate of $1,666.03.

87.    Additionally, the encumbrance by the Subordinate Lien Claimants constitutes a material default under the Mortgage and the Loan Agreement. As a result, Chambers Bank has incurred legal and other fees and expenses in connection with defending the priority of the Mortgage against the Subordinate Lien Claimants. Chambers Bank has also incurred costs in preserving the collateral set forth within the Mortgage, and in resolving issues related to the priority of interest related thereto. The Borrowers and Guarantors are liable for all outstanding amounts related to principle and interest under the Loan, for all amounts used to preserve the collateral that forms the basis of the Mortgage, and for all attorney's fees and costs incurred throughout the course of this action.

88.    As per the terms of the Guaranties, the Guarantors are obligated to cure said defaults of the Borrowers.

89.    The Loan Documents and Guaranties obligate the Borrowers and the Guarantors, upon default, for the payment of all expenses of collection, enforcement, or protection of Chambers Bank's rights under the Loan Documents, including reasonable attorney's fees, court costs, other legal expenses, and all amounts incurred by Chambers Bank to protect or preserve, or maintain the priority of, Chambers Bank's lien on or security interest in, any collateral given by Borrower to Chambers Bank to secure the Note.

## III.
## THE BREACH OF THE LOCKBOX AGREEMENTS

90.    In an effort to secure payment for work performed by Vitro, and as more specifically set forth in the August 4 Order, Vitro, the Israels, Commerce Park II, and Dixie

Construction entered into that certain Lockbox Agreement in which the Israels, Commerce Park II, and Dixie Construction contractually guaranteed the payment of amounts due and owing to Vitro.

91.     In an effort to secure payment for work performed by Campbell, and as more specifically set forth in the August 4 Order, Campbell, the Israels, Commerce Park II, Dixie Construction, Dixie Development, and Dixie Management entered into that certain Lockbox Agreement in which the Israels, Commerce Park II, Dixie Development, Dixie Management, and Dixie Construction contractually guaranteed the payment of amounts due and owing to Campbell.

92.     In an effort to secure payment for work performed by Built-Well, and as more specifically set forth in the August 4 Order, Built-Well, the Israels, Commerce Park II, Dixie Construction, Dixie Development, and Dixie Management entered into that certain Lockbox Agreement in which the Israels, Commerce Park II, Dixie Development, Dixie Management, and Dixie Construction contractually guaranteed the payment of amounts due and owing to Built-Well.

93.     In an effort to secure payment for work performed by Kitchen Distributors, and as more specifically set forth in the August 4 Order, Kitchen Distributors, the Israels, Commerce Park II, Dixie Construction, Dixie Development, and Dixie Management entered into that certain Lockbox Agreement in which the Israels, Commerce Park II, Dixie Development, Dixie Management, and Dixie Construction contractually guaranteed the payment of amounts due and owing to Kitchen Distributors.

**III.**
## SETTLEMENT AND COMPROMISE OF THE SUBORDINATE LIEN CLAIMANTS' CONTENTION OF PRIORITY OVER THE MORTGAGE

94.     The Subordinate Lien Claimants (exclusive of the IRS) have asserted that the liens, claims, and encumbrances claimed by each in the Property arising from certain mechanics' and materialmens' liens (collectively, the "Lien Claims") are senior and paramount to the priority of the Mortgage.

95.     Chambers Bank provided each of the Owners and Guarantors notice of these Lien Claims in the Default Letter and provided the Owners and Guarantors a period of thirty (30) days to cure the same.

96.     The Owners and Guarantors failed to cure the defaults under the Loan arising from the imposition of the Lien Claims. Accordingly, pursuant to the provisions of the Loan Documents, specifically the Loan Agreement and Mortgage, Chambers Bank is entitled to take all necessary and proper steps for the defense of its Mortgage interest, including, without limitation, the compromise or discharge of claims made against the Property and the interest of the Mortgage. Further, any payments or settlements made by Chambers Bank in this regard are subject to reimbursement by Borrowers under the terms of the Loan Documents, and Borrowers are, accordingly, jointly and severally liable for the repayment of the same to Chambers Bank immediately at the place where the Note is payable, together with interest thereon at the highest rate permitted by applicable law.

97.     In order to settle and compromise the claim of priority of the Lien Claims, Chambers Bank, in good faith, incurred an additional $379,991.09 to the Subordinate Lien Claimants (the "Lien Claim Settlements"), which was reasonable and necessary to ensure the first priority of the Mortgage. The Lien Claim Settlements are deemed advances made under the Note and shall bear interest at the highest rate permitted by applicable law, and, pursuant to the

DECREE GRANTING CHAMBERS BANK OF NORTH ARKANSAS FORECLOSURE AND PERSONAL JUDGMENTS AGAINST BORROWERS AND GUARANTORS -- Page 21 of 28
FILENAME

Mortgage, the Borrowers are obligated to repay the full amount of the same as further stated below.

98.     By way of either the Lien Claimant Settlements or by way of previous Order of this Court, the lien claims of the Subordinate Lien Claimants are deemed valid and enforceable, subordinate only to the mortgage interest of Chambers Bank.

99.     Additionally, because each Guarantor guaranteed all amounts "incurred by Lender to protect or preserve, or maintain the priority of, Lender's lien on or security interest in, any collateral given by Borrower to Lender to secure the Note . . . .", each Guarantor's liability for the obligations under the Note shall include amounts expended in the Lien Claimant Settlements.

100.    On June 20, 2008, Chambers Bank filed that certain Motion of Chambers Bank of North Arkansas For Summary Judgment Against Borrowers and Guarantors [Docket No. 242] (the "Motion for Summary Judgment"), which requested the entry of judgment against each of the Guarantors and Borrowers for all indebtedness owing under each of the Loan Documents, as set forth above.  On August 1, 2008, the Court entered an Order granting the relief sought in the Motion for Summary Judgment [Docket No. 377].

101.    In lieu of proceeding to trial with respect to the damage component of the relief sought by Chambers Bank, on August 5, 2008, the parties executed that certain Joint Trial Stipulation of Facts in Lieu of Requiring Presentation of Evidence at Trial (the "Joint Stipulation") [Docket No. 398]. This Court further issued an Order upon said Joint Stipulation on August 6, 2008 [Docket No. 409] (the "Order on Stipulation"), in which this Court found that Chambers had suffered the following damages: (1) $10,135,000.00 relating to the principle amount of the Loan that is currently outstanding; (2) $921,591.74 relating to interest under the Loan that was due and outstanding as of September 8, 2008, in addition to the per diem accrual

DECREE GRANTING CHAMBERS BANK OF NORTH ARKANSAS FORECLOSURE AND PERSONAL
JUDGMENTS AGAINST BORROWERS AND GUARANTORS – Page 22 of 28
FILENAME

of $1,666.03 until the date of entry of this Consent Decree by this Court; (3) $6,000 related to late fees due pursuant to the Loan; (4) $700 in miscellaneous fees due and outstanding per the terms of the Loan; and (5) $379,991.90 related to the amounts expended by Chambers Bank to preserve and protect the interest of the Mortgage.

102.    Further, pursuant to that certain Order of this Court dated September 4, 2008 (the "Fee and Cost Order") [Docket No. 419], this Court awarded attorneys' fees in the amount  in the amount of $214,508.19, and costs as per the Fee and Cost Order in the amount of $10,427.66.

103.    Chambers Bank's right of foreclosure has become absolute.

104.    Chambers Bank properly filed a *Lis Pendens* with the Clerk of the Circuit Court of Washington County, Arkansas on March 11, 2008 (the "Lis Pendens").

**IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED, AND DECREED as follows:**

A.      Chambers Bank is entitled to an in rem judgment against the Property, and all fixtures, improvements, tangible and intangible personal property of the Borrowers located on, at, or in the Property, and a judgment in personam against each Borrower and Guarantor to the extent of each Borrower's and Guarantor's percentage of liability as set forth above, for the aggregate amount of the following: (a) unpaid principal  of $10,135,000.00 under the Note, (b) accrued but unpaid interest in the amount of $921,591.74 as of September 8, 2008, and accruing each day thereafter to the date of this Judgment at the rate of $1,666.03 until the date of entry of this Consent Decree by this Court, (c) late fees and miscellaneous fees in the amount of $6,700.00, (d) amounts expended by Chambers Bank to protect and maintain the priority of the security of its Mortgage in the amount of $379,991.90.00, (f) reasonable and necessary attorneys' fees as per the Fee and Cost Order in the amount of $214,508.19, and (e) abstracting and other costs as per the Fee and Cost Order in the amount of $10,427.66. The aggregate

amount of the forgoing is $11,668,219.49, for all of which execution or garnishment may issue as upon a judgment at law for the judgment or any part thereof remaining unpaid after the sale of the Property at a foreclosure sale as hereinafter decreed.

B.    Based on the percentage limitations of each Borrower's and Guarantor's liability, the *in personam* judgment against each Borrower and Guarantor shall be in the amounts set forth below (through September 8, 2008, with additional interest to continue accruing as set forth herein):

| | | |
|---|---|---|
| (a) | Commerce: | $6,158,486.25 |
| (b) | NCR: | $2,917,054.87 |
| (c) | Prime: | $2,532,003.63 |
| (d) | Mr. Marinoni and Mrs. Marinoni, jointly and severally: | $369,560.18 |
| (e) | Mr. Israel, Mrs. Israel, DMI, The Mr. Israel Trust, and the Mrs. Israel Trust, jointly and severally: | $5,834,109.75 |
| (f) | Mr. Muccio, Mrs. Muccio, and the Muccio Trust, jointly and severally: | $5,834,109.75 |
| (g) | Mr. and Mrs. Fath, jointly and severally: | $2,532,003.63 |
| (h) | Mr. Rhyne and Mrs. Rhyne, jointly and severally: | $116,682.19 |
| (i) | Mr. Trzeciak, Mrs. Trzeciak, and Threejack, LLC, jointly and severally: | $735,097.83 |
| (j) | Mr. Mobley and Mrs. Mobley, jointly and severally: | $116,682.19[1] |
| (k) | M & R Investments, LLC: | $116,682.19 |

[1] As part of a settlement by and between Chambers Bank and Mobley Architects, Inc., which has asserted a lien against the Property, Chambers Bank has agreed to not pursue its guaranty rights against Mr. and Mrs. Mobley for that portion of the judgment relating to the settlement of the claims of the Lien Claimants. In return, Mobley Architects, Inc. agreed to confirm the subordination of its lien to lien of the Mortgage.

C.      Upon the entry of this Consent Decree, interest on the above amounts shall continue at the judgment rate of 10% per annum until the above stated amounts are satisfied.

D.      Pursuant to and under the Mortgage, and upon the stipulations of the parties, Chambers Bank has a first and senior lien, to secure the payments noted above, upon the Property and all fixtures, improvements, tangible and intangible personal property of the Borrowers located on, at, or in the Property. Said lien is prior and paramount to any right, title, claim, interest, equity, or estate of the Borrowers, Guarantors, Subordinate Lien Claimants, any other party in this proceeding, any party obtaining or claiming any interest in the Property and all fixtures, improvements, tangible and intangible personal property after the date the Lis Pendens was filed, or anyone claiming by, through, or under them.

E.      Upon the entry of a judgment, if the aforesaid sums are not paid within ten (10) days of such date, the Commissioner of Washington County, Arkansas shall, after having advertised the time, terms, and place of sale by publication in some newspaper published and having a general circulation in Washington County, Arkansas, one time at least ten (10) days prior to the date of sale, sell at the designated door of the Washington County Courthouse, wherever presently located, at public auction to the highest bidder on a credit of three (3) months, the Property and all fixtures, improvements, tangible and intangible personal property. The purchaser on the date of sale shall be required to pay the full purchase price or pay ten percent (10%) of the purchase price which is non-refundable, and execute a bond, with approved surety, to assure the payment of the purchase price plus interest at the rate provided by the Note or ten percent (10%) per annum whichever is greater; however, said rate shall be no more than the Federal Reserve Discount Rate (or other applicable rate) plus five percent (5%), from date of sale until paid, and a lien shall be retained as additional security for the payment of such

purchase price plus accrued interest; provided, that if Chambers Bank shall become the purchaser at such sale for an amount not in excess of the judgment and costs herein, in lieu of giving bond, Chambers Bank may credit the amount of its bid, less costs and Commissioner's fee, toward its judgment at the time of confirmation of such sale, which credit shall be an extinguishment of this judgment to the extent of such credit; and provided further, that if the amount bid by Chambers Bank shall exceed the amount of the judgment and costs, bond shall be required only for the excess. Any successful bidder will be responsible, if required by law, for all revenue transfer stamps for the Commissioner's deed. Should any successful bidder fail to perform under the instructions of the Commissioner at the time of sale, then that bid shall be void and set aside. The Commissioner thereafter shall find that the Property and all fixtures, improvements, tangible and intangible personal property be awarded to the next successive highest bidder, until performance is rendered.

F.      After any such sale, if money in excess of Chambers Bank's judgment is received as a result of the Commissioner's sale, the excess shall be distributed on a pro rata basis to the Subordinate Lien Claimants calculated in accordance with the monetary amount of their materialman's lien as set forth herein or by previous order of this Court. *See* August 4 Order.

G.      After any such sale, if money is received in excess of Chambers Bank's judgment and the claims of the Subordinate Lien Claimants, the excess shall be held in the registry of this Court to be distributed pursuant to further orders of this Court. In the event there is any dispute as to the respective claims of the Subordinate Lien Claimants, the excess shall be held in the registry of this Court to be distributed pursuant to further orders of this Court.

H.      That upon the sale of the Property and all fixtures, improvements, tangible and intangible personal property in accordance with this Judgment, all the right, title, claim, equity,

interest, and estate of the Owners, Guarantors, Subordinate Lien Claimants, and any other parties herein, any party obtaining or claiming any interest in the Property and all fixtures, improvements, tangible and intangible personal property after the date the Lis Pendens was filed, or any one claiming by, through, or under them in and to the Property and all fixtures, improvements, tangible and intangible personal property, and every part thereof, shall be and the same is hereby forever barred and foreclosed, including all rights or possibility of dower, curtesy, and homestead and all legal or equitable rights of redemption.

I.     In the event the judgment herein awarded is not paid as directed and the Property and all fixtures, improvements, tangible and intangible personal property is sold by the Commissioner at a foreclosure sale, upon application by the successful foreclosure sale purchaser, or purchaser's attorney, showing that possession of the Property and all fixtures, improvements, tangible and intangible personal property has been withheld from such purchaser, the clerk will issue and deliver to the Sheriff of Washington County, Arkansas, a Writ of Assistance directing the Sheriff to place such purchaser in immediate possession.

J.     That the Circuit Clerk of Washington County, Arkansas is hereby appointed Commissioner to execute this Judgment, and is directed to make the sale as herein provided for and report his actions hereunder to this Court.

K.     As set forth in August 4 Order, Vitro is hereby granted a Judgment against the Israels, Commerce Park II, and Dixie Construction, LLC in the amount of $292,870.92 with said amount to accrue post-judgment interest hereafter at the rate of 10% per annum until paid in full.

L.   As set forth in the August 4 Order, Campbell is hereby granted a Judgment against the Israels, Commerce Park II, LLC, Dixie Construction, Dixie Development, and Dixie Management in the amount of $226,489.85.[2]

M.   As set forth in the August 4 Order, Built-Well is hereby granted a Judgment against the Israels, Commerce Park II, LLC, Dixie Construction, Dixie Development, and Dixie Management in the amount of $254,364.02.

N.   As set forth in the August 4 Order, Kitchen Distributors is hereby granted a Judgment against the Israels, Commerce Park II, LLC, Dixie Construction, Dixie Management and Investment, and Dixie Development in the amount of $90,976.23.

IT IS HEREBY ORDERED.

This day of _23_ September, 2008.

Honorable Robert T. Dawson

Prepared by:
Seth M. Haines, AB # 2004068
FRIDAY, ELDREDGE & CLARK, LLP
3425 North Futrall Drive
Fayetteville, Arkansas 72703-4811
Telephone: (479) 695-1107
Facsimile: (479) 695-2147

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

SEP 2 3 2008

CHRIS R. JOHNSON, CLERK

BY
                DEPUTY CLERK

---

[2] Although the August 4 Order stated that the judgment amount of Campbell against the Israels amounted to $292,915.62, Campbell has respectfully indicated that that amount was incorrectly stated. Campbell believes that this was a clerical error. The actual balance set forth within the Campbell Lockbox Agreement, and thus the number that should have been set forth in the Court's summary judgment order, is correctly stated above.

**DECREE GRANTING CHAMBERS BANK OF NORTH ARKANSAS FORECLOSURE AND PERSONAL JUDGMENTS AGAINST BORROWERS AND GUARANTORS – Page 28 of 28**
FILENAME